David A. Bahr (Oregon Bar No. 90199)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439
davebahr@mindspring.com

Elena Saxonhouse (California Bar. No. 235139)
Sierra Club Environmental Law Program
85 Second St., 2nd Floor
San Francisco, CA 94105
(415) 977-5765
(415) 977-5793 (facsimile)
Elena.Saxonhouse@Sierraclub.org

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **THE SIERRA CLUB** and **ENVIRONMENTAL INTEGRITY PROJECT,**<br><br>        Plaintiffs,<br><br>    *vs.*<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br>        Defendant. | Case No. C-11-0846-MEJ<br><br>**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:    July 24, 2014<br>Time:   10:00 a.m.<br>Place:  Courtroom B, 15th Fl.<br>Before: Hon. Maria-Elena James,<br>            U.S. Magistrate Judge |

# Table of Contents

I. INTRODUCTION ............................................................................................................... 1

II. THE LEGAL AND FACTUAL CONTEXT FOR THIS MOTION ................................... 3

   1. The Context of FOIA Attorney Fees. ............................................................................. 3

   2. The Context of This Case. .............................................................................................. 4

III. THE FREEDOM OF INFORMATION ACT MANDATES AN AWARD OF REASONABLE ATTORNEY FEES AND LITIGATION COSTS IN THIS CASE. ............................................... 8

   1. Plaintiffs have Substantially Prevailed and Are Therefore Eligible For An Award Of Attorney Fees And Costs. ............................................................................ 8

   2. Plaintiffs Are Entitled To The Award Of Attorney Fees And Costs ............................ 10

     A. An Attorney Fee Award is Appropriate Because Plaintiffs Sought the Information for a Public Purpose. ................................................................................... 11

     B. Plaintiffs' Lack of a Commercial Benefit From Disclosure and the Nature Of Their Interests in This Request Support the Award of Fees. ......................................... 12

     C. Defendant Lacked Any Reasonable Basis In Law For Withholding ......................... 13
       The Requested Information. ........................................................................................ 13

IV. BASIS FOR REASONABLE FEES ............................................................................... 14

   1. The Hourly Rates Requested Are Reasonable. ............................................................. 15

   2. The Number of Hours Claimed by Plaintiffs' is Reasonable ........................................ 18

   3. Out-Of-Pocket Expenses. .............................................................................................. 21

V. CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

### Cases

Blue v. Bureau of Prisons, 570 F.2d 529 (5th Cir. 1978) ................................................... 11

Blum v. Stenson, 465 U.S. 886 (1984) ........................................................................... 14, 15

Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598 (2001) .................................................................................................................... 9

Carter v. Veterans Admin., 780 F.2d 1479 (9th Cir.1986) .................................................... 8

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

i

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

Chalmers v. City of Los Angeles, 796 F.2d 1205 (9th Cir. 1986) ............................................ 21

Church of Scientology v. U.S. Postal Serv., 700 F.2d 486 (9th Cir. 1983) .......................... 3, 9

Cotton v. Heyman, 63 F.3d 1115 (D.C. Cir. 1995) ..................................................... 11, 12

Davis v. City & County of San Francisco, 976 F.2d 1536 (9th Cir. 1992) ........................... 15

Exner v. F.B.I., 443 F. Supp 1349 (S.D. Calf. 1978).................................................... 3, 10

FCC v. AT & T Inc., 131 S. Ct. 1177 (2011) ....................................................................... 9

Hart v. U.S. Dep't of Health & Human Serv., 676 F. Supp. 2d 846 (D. Ariz. 2009) .............................. 10

Hensley v. Eckerhart, 461 U.S. 424 (1983) .................................................................. 14, 16

Jordan v. Multnomah County, 815 F.2d 1258 (9th Cir. 1987) ........................................... 15

Kuzma v. I.R.S., 821 F.2d 930 (2d Cir. 1987)................................................................ 21

LaSalle Extension Univ. v. Federal Trade Comm'n, 627 F.2d 481 (D.C. Cir. 1980) ....................... 3

Local 598 v. Dept. of Army Corps. of Engineers, 841 F.2d 1459 (9th Cir. 1988) ................... 10, 12

Long v. U.S. Internal Revenue Serv., 932 F.2d 1309 (9th Cir. 1991) ........................... 4, 10, 14

Milner v. Dep't of Navy, 131 S. Ct. 1259 (2011 ............................................................ 9

Moore v. Jas. H. Matthews & Co., 682 F.2d 830 (9th Cir. 1982) ...................................... 18

Moreno v. City of Sacramento, 534 Fed.3d. 1106 (9th Cir. 2008)..................................... 19

Nationwide Building Maintenance, Inc. v. Sampson, 559 F.2d 704 (D.C. Cir. 1977).................... 3

Northcross v. Bd. of Education, 611 F.2d 624 (6th Cir. 1979)............................................ 21

Oregon Natural Desert Ass'n v. Locke, 572 F.3d 610 (9th Cir. 2009).................................... 9

Thornberry v. Delta Airlines, Inc., 676 F. 2d 1240 (9th Cir. 1982)................................... 21

United Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403 (9th Cir. 1990) .................. 21

**Statutes**

28 U.S.C. § 1920 ............................................................................................. 21

5 U.S.C. § 552(a)(4)(E)........................................................................ 2, 8, 9, 10, 14, 21

5 U.S.C. § 552(a)(4)(E)(ii)(II) ......................................................................... 8

5 U.S.C. § 552(a)(6)(A)(i) .............................................................................. 4

5 U.S.C. § 552(a)(6)(B)(i)............................................................................... 4

5 U.S.C. § 552(a)(7)(B) ............................................................................. 5, 14

5 U.S.C. § 552(a)(7)(B)(ii) ........................................................................... 14

5 U.S.C. § 552(b)(4) ..................................................................................... 4

5 U.S.C. §§ 552(a)(4)(E)(ii)(I).......................................................................... 9

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

ii

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

**Regulations**

40 C.F.R. § 2.204(d)(1)...................................................................................... 4

**Other**

S. Rep. No. 93-854, May 16, 1974, 93rd Cong., 2d Sess. .......................... 3, 11, 13

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

iii

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

## L.R. 54-5(B)(1) CERTIFICATION

In email and telephone communications between March 4, 2014 and March 12, 2014, in response to Plaintiffs' good faith inquiry, EPA reiterated to the undersigned Plaintiffs' counsel that it is "not inclined to negotiate a resolution to the fee request." *See, e.g.*, Bahr Declaration filed herewith at ¶ 15. Accordingly, pursuant to L.R. 54-5(b)(1), Plaintiffs hereby certify that there was no reasonable basis to further explore settlement of the attorney fee and cost issue and that no conference was convened for that purpose. Bahr Decl (filed herewith) at ¶ 15.

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on July 24, 2014, at 10:00 a.m. or at such other time determined by the Court, before the Honorable Maria-Elena James, Chief U.S. Magistrate Judge, Plaintiffs Sierra Club and Environmental Integrity Project will request pursuant to Rule 54 of the Federal Rules of Civil Procedure ("FRCP"), an order granting this petition for attorney fees and costs.

This motion is based on this notice of motion, the memorandum of points and authorities in support of this motion, the declarations and attached exhibits in support of this motion, and all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

## I.  INTRODUCTION

Plaintiffs, Sierra Club and Environmental Integrity Project, have prevailed in this action because their suit caused the release of over 44,000 pages of records responsive to their Freedom of Information Act ("FOIA") request. Further, Plaintiffs' agreement to dismiss their case while over 300,000 pages of additional information remained to be processed by Defendant Environmental Protection Agency ("EPA") was expressly conditioned on the Agency's settlement promise to swiftly complete the processing of a second FOIA request by a date certain, an obligation Defendant satisfied. These events would not have occurred without the filing of this action and they materially benefitted the Plaintiffs' and the public's oversight of EPA's Clean Air Act ("CAA") regulatory and enforcement programs.

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

1

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

In its court filings, Defendant acknowledges that throughout the administrative process — notwithstanding Plaintiffs' repeated attempts to discern when the Agency intended to make a final decision regarding the continuing withholding of the requested information — EPA did not provide the estimated completion date that it admits is mandated by FOIA. Given no other reasonable option, Plaintiffs were required to file suit. Almost immediately upon the commencement of this case, the Parties engaged in a formal mediation process that resulted in a binding order obligating the Agency to disclose to Plaintiffs tens of thousands of pages of documents in a manner and on a schedule that would not have been enforceable without this litigation. These facts alone establish Plaintiffs as substantially prevailing parties in this case. Additionally, the *quid pro quo* provision in the settlement agreement resolving this dispute required EPA to promptly process Plaintiffs' second FOIA request in exchange for the dismissal of this case is yet another commitment binding EPA's conduct under FOIA that would not have been available to Plaintiffs but for this litigation.

This petition is filed under the FOIA's attorney fee provision, 5 U.S.C. § 552(a)(4)(E), which allows that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." The outcome of Plaintiffs' suit has been Agency action, and consequent public access to information, of the type sought in their complaint; they have therefore "substantially prevailed." Accordingly, Plaintiffs seek an award of fees and costs in the amount of $162,041.06. This total includes the reasonable sum of $160,177.50 in lodestar attorney fees, in addition to $1,863.56 in litigation costs necessarily incurred in the prosecution of this case.

/ / /

/ / /

/ / /

/ / /

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

2

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

## II.  THE LEGAL AND FACTUAL CONTEXT FOR THIS MOTION

### 1.  THE CONTEXT OF FOIA ATTORNEY FEES.

The FOIA's attorney fee provision was added in 1974 in response to congressional concern that potential information requesters would be unable to secure adequate legal representation because there would be no financial incentive for an attorney to take on a FOIA case on a contingency basis. The drafters of the fee provision reasoned that because FOIA's subject matter were documents and other materials having little intrinsic monetary value, there would be no likelihood of money damages from which to extract a fee. *See* S. Rep. No. 93-854, May 16, 1974, 93rd Cong., 2d Sess.

Because FOIA's basic policy is "to encourage the maximum feasible public access to government information. . . . The attorney fees provision of the statute has as its fundamental purpose the facilitation of citizen access to the courts to vindicate the public's statutory rights." *Exner v. F.B.I.,* 443 F. Supp 1349, 1351 (S.D. Calf. 1978), *aff'd,* 612 F.2d 1202 (9th Cir. 1980), *quoting, Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704, 715 (D.C. Cir. 1977). "Congress realized that an allowance of fees and costs was necessary in FOIA actions to encourage full public disclosure of government information. Congress has made a clear determination that an award of attorney fees is appropriate and desirable whenever a complainant prevails in FOIA litigation." *Exner*, 443 F. Supp. at 1352, (citations omitted).

Accordingly, FOIA's fee-shifting provision serves two purposes: (1) "to encourage [FOIA] suits that benefit the public interest" and (2) to serve "as compensation for enduring an agency's unreasonable obduracy in refusing to comply with the [FOIA's] requirements." *LaSalle Extension Univ. v. Federal Trade Comm'n,* 627 F.2d 481, 484 (D.C. Cir. 1980). "[W]here the plaintiff is indigent or a nonprofit public interest group, an award of attorney fees further the FOIA policy of expanding access to government information." *Church of Scientology v. U.S. Postal Serv.,* 700 F.2d 486, 494 (9th Cir. 1983).

The Ninth Circuit applies a two-pronged analysis to FOIA fee awards: to receive an award of

fees, a prevailing party in a FOIA action must demonstrate both *eligibility* and *entitlement* to such a recovery. *Long v. U.S. Internal Revenue Serv.,* 932 F.2d 1309, 1313 (9th Cir. 1991) (citing *Scientology*, 700 F.2d at 492). Plaintiffs satisfy both of these prongs, as discussed below.

### 2. THE CONTEXT OF THIS CASE.

In their May 25, 2011, Joint Case Management Conference Statement, dkt. # 15, the Parties to this action stipulated to the following facts:

On February 25, 2010, Plaintiffs submitted a FOIA request to the EPA seeking information received by the Agency through its requests for information under Section 114 of the Clean Air Act, 42 U.S.C. § 7414 regarding Luminant's fleet of Texas coal-fired power plants owned and operated by the Luminant Generation Company, LLC ("Luminant"). *Id*. at ¶ 2. By letter dated March 23, 2010, the EPA informed Plaintiffs that an extension to FOIA's 20-business day decision deadline[1] was required due to "the need to search for, collect and appropriately examine a voluminous amount of separate and distinct records involved in [Plaintiffs'] request." *Id*. The EPA Letter unilaterally extended its decision deadline to April 9, 2010.[2] *Id*. By letter dated April 7, 2010, the EPA provided some information to Plaintiffs responsive to their FOIA request. *Id*. In its April 7, 2010 letter, the EPA also informed Plaintiffs that there were a significant number of records responsive to their FOIA request for which a disclosure determination had not yet been made due to the EPA's ongoing review of the claims made by Luminant that the information is confidential business information ("CBI") possibly subject to FOIA's Exemption 4. 5 U.S.C. § 552(b)(4); 40 C.F.R. § 2.204(d)(1). *Id*. EPA's letter informed Plaintiffs that "your request is being initially denied with respect to these records because further inquiry by EPA required before a fi-

---

[1] FOIA requires an agency to issue a final determination resolving an information request within twenty business days from the date of its receipt. 5 U.S.C. § 552(a)(6)(A)(i). It also requires an agency to provide "an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)-(7)(B)(ii).

[2] FOIA allows a decision deadline extension of up to 10 business days if certain limited "unusual circumstances" are present. 5 U.S.C. § 552(a)(6)(B)(i).

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS
4
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

nal determination can be made." *Id*. Defendant's "initial denial" applied to approximately 350,000 pages of information responsive to Plaintiffs' FOIA request being withheld by EPA, but it did not indicate when it would make a final determination.[3] *Id*.

On May 7, 2010, Plaintiffs timely appealed, via email, the adverse action embodied by EPA's "initial denial" letter. *Id*. By letter dated June 8, 2010, EPA denied Plaintiffs' administrative appeal. *Id*.

Notably, in its joint statement to the Court, EPA acknowledged Plaintiffs' repeated attempts, "via a number of communications with EPA," to discern when the Agency intended to make a final determination on the continuing withholding of approximately 350,000 pages of information responsive to their FOIA request. *Id*. However, the Agency conceded that it had not provided "an estimated date on which the agency will complete action on the request." *Id*. EPA further admitted that providing Plaintiffs an estimated completion date is required by FOIA, citing 5 U.S.C. § 552(a)(7)(B). *Id*.

As of the date this action was filed, as well as when the Parties filed their Joint Case Management Statement, the EPA had not issued a final determination on Plaintiffs' FOIA request nor had it provided an estimated completion date.[4] *Id*.

Prompt access to the records sought in their FOIA request was crucial to Plaintiffs because the information is directly relevant to their ability to effectively participate in, and provide public oversight of, Defendant's implementation of its CAA regulatory and enforcement programs, particularly as they pertain to Luminant's power plants. As Environmental Integrity Project staff explained, this type of public oversight of an agency's implementation of its regulatory authority can be an effective means to en-

---

[3] *See e.g.*, Exhibit C, dkt. # 6 at 4-5, attached to the Complaint. EPA's April 7, 2010 letter did not indicate when, if ever, it would make a final decision regarding the release of these documents as required by FOIA. 5 U.S.C. § 552(a)(7)(B)(ii). *Id*.

[4] It is worth nothing that the closest EPA came to providing an estimated completion date for Plaintiffs' request was a suggestion of "more than 20 years" offered in its summary judgment reply brief. Dkt. # 37 at 7. Of course this opinion of counsel offered in the midst of litigation cannot discharge Defendant's obligation to provide an estimated completion date during the administrative processing of a request that is imposed by FOIA. 5 U.S.C. § 552(a)(7)(B)(ii).

hance compliance with environmental protection laws. *See, e.g.*, Saxonhouse Decl. at ¶ 4; *see also*, Saxonhouse MOSJ Decl., dkt. # 34, at ¶¶ 4-11; Levin MOSJ Decl., dkt. # 35, at ¶¶ 4-8, 11-14.

Because, as noted above, EPA's "initial denial" letter did not provide an estimated completion date as required by FOIA, Plaintiffs attempted, "via a number of communications with EPA," to discern when the Agency intended to make a final determination on their FOIA request. JCMS, dkt. 15 at ¶ 2; Levin Decl., filed herewith, at ¶ 7. For example, by email dated April 26, 2010, Plaintiff's requested an estimated completion date. *Id*. By letter dated May 7, 2010, Plaintiffs filed with the Agency, the above noted appeal of EPA's initial denial and refusal to provide an estimated completion date for their request and again asked for a date of final resolution. Bahr Decl. at ¶ 28. On June 8, 2010, EPA denied the appeal and, again, refused to provide an estimated completion date for Plaintiffs' information request. *See, e.g.*, Complaint Exhibit D, dkt. # 6 at 8-9. Throughout the rest of 2010 and into 2011 before this suit was filed, Plaintiffs made repeated efforts to learn from EPA when, if ever, it expected to complete processing their FOIA request. Levin Decl. at ¶ 7; JCMS, dkt. 15, at ¶ 2. However, the Agency refused to provide an estimated completion date or provide any other substantive communications regarding its progress toward completion of their request. *Id*. Directly consequent to the Agency's failure to inform Plaintiffs of the nature and scope any progress toward completion of their FOIA request, on February 23, 2011 this suit was necessarily filed.

However, almost immediately upon the filing of the Complaint, the Parties explored the option of settlement via the Court's formal mediation program. Consequent to that process, Plaintiffs obtained, via the stipulation on mediation, an Order dated June 27, 2011, dkt #20, requiring EPA to disclose non-CBI docs at rate of 1600 pages per month; a commitment binding EPA that ultimately caused the release of over 44,000 pages of responsive records, Bahr Decl. at ¶ 28, which was a direct result of Plaintiffs' complaint which they would not have obtained without filing their suit.

Unfortunately, the Parties were not able to completely resolve their dispute regarding the remain-

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

6

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

ing approximately 300,000 pages of documents that remained to be processed by EPA, and because the

Agency still refused to provide an estimated completion date for Plaintiffs' request (other than the un-

reasonable "20 years"), Bahr Decl. at ¶¶ 28-29, the case was reset for summary judgment. *See, e.g.*, Or-

der granting summary briefing schedule, dkt. # 23. After summary judgment was fully briefed, the Court

vacated the argument and ordered the Parties to meet in her Chambers to meet and confer in good faith.

Order dated May, 15, 2012, dkt. # 50.

The second round of settlement discussions, although protracted, did ultimately result in Defen-

dants' agreement to timely process a second FOIA request that targeted information that Plaintiffs'

learned was in Defendants' possession at that time and which was precisely the type of information

Plaintiffs had been seeking in their original request.[5] Saxonhouse Decl. at ¶ 17. Accordingly, rather than

insist — as was their right under FOIA and the claims presented in this case — that EPA continue to

process its original request (with approximately 300,000 pages of records remaining to review and dis-

close), Plaintiffs instead agreed to release the Agency from the burden of responding to its original re-

quest in exchange for EPA's promise to swiftly process and complete by a date-certain, a second FOIA

request. Consequently, the Parties finally executed a settlement agreement calling for Plaintiffs' with-

drawal of their initial FOIA request and the dismissal of this action upon timely completion of a second

FOIA request, which focused on a targeted number of documents based on information Plaintiffs devel-

---

[5] Subsequent to the initiation of this lawsuit, in July 2012, EPA issued a public Notice of Violation to Luminant for Clean Air Act violations at its Big Brown and Martin Lake plants based on the investigation on which Plaintiffs had been seeking information. However, EPA did not make public the NOV's Appendix, which contained the details of the violations, because it had yet to make a CBI determination on the underlying information. *See* Saxonhouse Decl. at 17. EPA, represented by the United States Department of Justice's Environment Division, filed a civil action against Luminant to enforce these violations in August 2013, but again, key details in the Complaint had to be redacted because EPA still had not made a CBI determination on the underlying information. *Id.* Per the agreement settling this case, Plaintiffs' second FOIA targeted EPA's "referral package" to the United States Department of Justice that contained the key documents supporting the EPA's Notice of Violation and subsequent lawsuit. *See, e.g.,* Order adopting settlement agreement, dkt. # 70, at ¶ 3.

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

7

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

oped while the settlement of this case unfolded. *See, e.g.*, Settlement Agreement Order, dkt. # 70, at ¶¶ 2-5.

Accordingly, Plaintiffs submitted their second FOIA request and Defendant provided a timely final decision as per the terms of the Settlement Agreement. Bahr Decl. at ¶ 30 . Defendant's decision was to immediately release 61 of the 65 documents it identified as responsive to the request as non-exempt under FOIA.[6] *Id*. Plaintiffs therefore stipulated to the dismissal of this case and the Court so ordered on March 3, 2014. Stipulated Dismissal and Order, dkt. # 72.

## III. THE FREEDOM OF INFORMATION ACT MANDATES AN AWARD OF REASONABLE ATTORNEY FEES AND LITIGATION COSTS IN THIS CASE.

### 1.   PLAINTIFFS HAVE SUBSTANTIALLY PREVAILED AND ARE THEREFORE ELIGIBLE FOR AN AWARD OF ATTORNEY FEES AND COSTS.

As noted above, FOIA's attorney fee provision provides that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Therefore, the analysis of a party's eligibility for costs and attorney fees begins with a determination of whether that party has "substantially prevailed" in the litigation. In this case, Plaintiffs are eligible for an award of attorney's fees and expenses pursuant to 5 U.S.C. § 552(a)(4)(E)(ii)(II), because they have substantially prevailed in this lawsuit through a "voluntary or unilateral change in position" by EPA after the suit was filed that caused the release of over 44,000 pages of documents responsive to their FOIA request. *Id*. *See* Bahr Decl. at ¶ 28. Moreover, in exchange for Plaintiffs' stipulation to dismiss their case,[7]

---

[6] Luminant has filed a legal challenge seeking to reverse EPA's release decision in the case *Lumiant v. U.S.E.P.A.*, Civ. No. 4:14-cv-172, currently pending in federal court for the Eastern District of Texas.

[7] Although the substantive case has been dismissed, dkt. # 72, attorney fee issues are ancillary to the underlying action and survive independently under the Court's equitable jurisdiction. *See Carter v. Veterans Admin.,* 780 F.2d 1479, 1481 (9th Cir.1986).

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

8

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

the Agency entered into a *quid pro quo* agreement to complete processing of a subsequent information request by a date certain. *See* Settlement Agreement, dkt # 70 at ¶ 4.

The current version of FOIA, signed into law on December 31, 2007, amended the attorneys' fee provision and changed the legal standard regarding a party's eligibility for an award of attorneys' fees. *See Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 615 (9th Cir. 2009) (noting the 2007 Amendment's lowering of the fee recovery threshold). FOIA now provides that a complainant has "substantially prevailed" if he has "obtained relief through either … a judicial order, or an enforceable written agreement or consent decree," or through a "voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. §§ 552(a)(4)(E)(ii)(I), (II).[8]

It is clear that the filing of Plaintiffs' case brought about a voluntary change in EPA's conduct. Prior to Plaintiff filing its complaint in this case, EPA issued an "initial denial" asserting that responsive

---

[8] The 2007 amendment was designed to ensure that FOIA complainants could rely on the "catalyst theory" to become eligible for an award of attorney fees. *See ONDA,* 572 F.3d at 612. The catalyst theory "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 601 (2001). Arguably, the "voluntary or unilateral change in position" language of 5 U.S.C. § 552(a)(4)(E)(ii)(II) actually introduced a much lower "substantially prevailing" threshold than that imposed by the catalyst theory which presumes some level of causal relationship between the filing of a suit and an agency's action; that the litigation be the "catalyst" precipitating the agency response. *See, e.g., Church of Scientology,* 700 F.2d at 489 (To "substantially prevail" under the catalyst theory, a plaintiff must show that: (1) the filing of the action could have been regarded as reasonably necessary to obtain the information; and (2) the filing of the action had a substantial causative effect on the delivery of the information). However, the ordinary meaning of the terms "voluntary" or "unilateral" does not speak to external causation but rather suggest an agency's self-motivation. The Supreme Court has recently issued interpretive guidance in two FOIA decisions that are directly relevant to this question. In vacating the so-called "High 2" exemption — not merely its application in that case, but its very existence — the Court stressed that judicial review of FOIA disputes "starts with its text." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1264 (2011). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Id*. Similarly, "[w]hen a statute does not define a term, the Court typically give[s] the phrase its ordinary meaning." *FCC v. AT & T Inc.*, 131 S. Ct. 1177, 1178 (2011) (internal punctuation and citation omitted). Regardless, under any interpretation of FOIA's attorney fee provision, Plaintiffs' suit resulted in the release of thousands of documents and a promise for timely processing of a subsequent information request after EPA had initially denied access to the requested information; Plaintiffs are clearly "substantially prevailing parties."

---

information was exempt from disclosure under FOIA's Exemption 4 and therefore refused its release. Moreover, the Agency failed to act in a timely manner within FOIA's decision deadlines and refused to provide an estimated completion date as required by FOIA. *See, e.g.,* JCMS, dkt. # 15, at ¶ 2; Bahr Decl. at ¶ 28. Only after Plaintiffs filed suit did EPA change its position and agree to release over 44,000 pages of documents for public review. *Id.*. Only through the threat of an adverse court order did EPA disclose the records and agree to the timely processing of the subsequent FOIA request with a date certain for a CBI determination. Plaintiffs' suit was necessary to obtain these results.

Accordingly, Plaintiffs are eligible for an award of attorney's fees. *See Hart v. U.S. Dep't of Health & Human Serv.*, 676 F. Supp. 2d 846, 857 (D. Ariz. 2009) ("under the current version of 5 U.S.C. § 552(a)(4)(E)(ii), Plaintiffs are eligible for an award of attorneys' fees if (a) they have obtained a judicial order granting them relief, or (b) Defendant voluntarily changed its position as a result of Plaintiffs' complaint.").

## 2. PLAINTIFFS ARE ENTITLED TO THE AWARD OF ATTORNEY FEES AND COSTS

If a plaintiff demonstrates it is eligible for fees, the determination of *entitlement* is left to the discretion of the district court. *Long v. IRS,* 932 F.2d at 1313 (citing *Scientology,* 700 F.2d at 492). In exercising this discretion, courts typically consider the following four criteria: (1) the public benefits resulting from disclosure; (2) the commercial benefit to the complainant resulting from disclosure; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of records had a reasonable basis in law. *Local 598 v. Dept. of Army Corps. of Engineers,* 841 F.2d 1459, 1461 (9th Cir. 1988), citing, *Scientology,* 700 F.2d at 492. These four criteria are not exhaustive, and the court also may take into consideration "whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate." *Long v. IRS*, 932 F.2d at 1313 (quoting *Exner*, 443 F.Supp. at 1352) (internal quotes omitted).

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

10

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

### A.   An Attorney Fee Award is Appropriate Because Plaintiffs Sought the Information for a Public Purpose.

The Senate Judiciary Committee Report on the Freedom of Information Act observed that under this criterion, "a court would ordinarily award fees, for example, where a . . . public interest group was seeking information to further a project benefiting the general public. . . ." S. Rep. No. 93-854, 93rd Cong. 2d Sess. 19 (emphasis added). *Scientology*, 700 F.2d at 493 n.6. A FOIA action results in a public benefit if a Plaintiffs' victory is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)); *Scientology*, 700 F.2d at 493 (also citing *Blue*, 570 F.2d at 533–34). Courts also take into account the degree of dissemination and the likely public impact that might result from disclosure. *Scientology*, 700 F.2d at 493.

It is therefore directly relevant that Plaintiff EIP declares:

> Environmental Integrity Project works to protect the public health and environment against the harmful effects of air and water pollution, among other goals. The documents at issue in this case concern several of the largest and dirtiest coal-fired power plants in the United States, operated by Luminant Generation Company, LLC in Texas. Protection of public health and the environment through efforts to ensure facilities' compliance with federal environmental laws is core to EIP's mission in Texas and nationally. Plaintiffs sought the underlying documents in this case to monitor the Environmental Protection Agency's efforts to compel Clean Air Act compliance at Luminant's Martin Lake, Big Brown, and Monticello power plants, and to gain a better understanding of the plants' operations, emissions, and Clean Air Act compliance. In my experience, this type of public oversight of an agency's implementation of its regulatory authority can be an effective means to enhance compliance with environmental protection laws.

Levin Decl. at ¶ 4; *see also*, Saxonhouse Decl. at ¶ 4. Accordingly, the "EPA's extreme delay in processing the Sierra Club's 2010 FOIA request for the information the Agency received from Luminant has materially prejudiced both the public's ability to monitor the Agency's CAA enforcement activity in Texas and its ability to develop a citizen enforcement strategy based on the information in EPA's possession." Saxonhouse MOSJ Decl. (dkt. # 34) at ¶ 9; *see also*, Saxonhouse Decl. ¶ 4 (noting time-sensitive nature of access to the information sought in the FOIA request..

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

11

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

Clearly, the public disclosure and review of the data at issue in this case fosters the public's ability to oversee and participate in Defendant's CAA programs in Texas. Plaintiffs therefore satisfy this prong of FOIA's entitlement analysis.

### B.    Plaintiffs' Lack of a Commercial Benefit From Disclosure and the Nature Of Their Interests in This Request Support the Award of Fees.

The second and third factors—whether a plaintiff will derive a commercial benefit from disclosure and the nature of the Plaintiffs' interests in the records—are closely related and typically considered together. *See Cotton,* 63 F.3d at 1120. "Both factors are intended to distinguish cases in which the claimant has a clear pecuniary or other economic interest in seeking disclosure, so that there is no need for an added incentive to bring a claim under the Act, from those where it is unlikely that a claim would have been brought absent the high probability that fees and costs of suit would be awarded against the intransigent agency." *Local 598*, 841 F.2d at 1462. In this way, "where the plaintiff is indigent or a non-profit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information." *Scientology*, 700 F.2d at 494.

Plaintiffs are non-profit organizations and have no intention of using the requested documents for commercial purposes. *See e.g.,* Saxonhouse Decl. at ¶ 5; Levin Decl. at ¶ 6. The Ninth Circuit has noted that if a party "realized no commercial benefit from [a disclosure of documents], it does not follow that this factor should be disregarded . . . *On the contrary, it would weigh in favor of a fee award*, since the fee award section of the Act was intended to encourage complainants who lack substantial pecuniary incentives to pursue their claims." *Local 598,* 841 F.2d at 1461-62 (emphasis added, citations omitted); *see also Scientology*, 700 F.2d at 494 (fees inappropriate only if there is a "potential private commercial benefit . . . sufficient to encourage plaintiff's pursuit of his claim"). Congress envisioned private attorneys general, advocating in the public's interest and encouraged this vision with the Act's attorney fee provision; "If the commercial benefit from disclosure was remote or unlikely, the law presumes that the

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS
12
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

fee award was a necessary encouragement." *Id*. at 1462.[9]

Because Plaintiffs are nonprofit public interest groups, "an award of attorney's fees further the FOIA policy of expanding access to government information." *Scientology*, 700 F.2d at 494. In addition, Plaintiffs further their public interest goals by disseminating information to the public via a variety of channels, including their newsletters, website, email listserve, public events, and other media contacts. *See, e.g.*, Saxonhouse Decl. at ¶ 6. Accordingly, the second and third criteria are satisfied.

### C.   Defendant Lacked Any Reasonable Basis In Law For Withholding The Requested Information.

The final criterion provides that a fee award is appropriate if the government's withholding was without a reasonable basis in law. *See Scientology*, 700 F.2d at 492 n.6 & 494. While Plaintiffs understand that EPA could not publicly release documents that Luminant designated as confidential business information without first completing the review process prescribed by law, EPA lacked a reasonable basis for failing to provide Plaintiffs with a reasonable deadline for making its CBI determinations and for failing to expeditiously distinguish and release non-CBI information. Moreover, in this litigation, EPA's defense has been to argue that "[t]here is no statutory or regulatory time limit for EPA to make a final determination" on Plaintiffs' FOIA request." *See, e.g*., EPA's MOSJ Reply, dkt. # 37, at 5. This argument has no reasonable basis in the FOIA's text, which requires a final decision on a FOIA request within 20 business days. 5 U.S.C. § 552(a) (6)(A)(i).

However, as noted above, EPA failed to issue a final decision on Plaintiffs' FOIA request at any time. Compounding this FOIA violation, regarding the open-ended delay in processing Plaintiffs' request, at no point did Defendant avail itself of the opportunity to invoke the "unusual circumstances" decision deadline extension beyond 10 business days afforded in limited circumstances by 5 U.S.C. §

---

[9] The Senate Judiciary Committee considering FOIA's attorney fee provision stated, "[u]nder the third criterion, a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or *public-interest oriented* but would not do so if his interest was of a frivolous or purely commercial nature." S. Rep. No. 93-854, 93rd Cong. 2d Sess. 19 (emphasis added).

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS
13
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

552(a)(6)(B). *See, e.g.*, Complaint Exhibits B and C, dkt. # 6, at 3-5. Moreover, Defendant's initial denial decision did not provide an estimated completion date nor was one provided at any point in this process as required by FOIA. 5 U.S.C. § 552(a)(7)(B)(ii). *See, e.g.*, JCMS, dkt.# 15, at ¶ 2; Bahr Decl. at ¶ 28 (noting that "Defendant's consistent refusal to provide an ECD for the processing of Plaintiffs' FOIA request effectively denied them the ability to make an informed decision regarding the risk/reward calculation of proceeding to a decision on the merits versus agreeing to settle the case.").

Further, much of the Parties' settlement efforts — which were keyed upon the their jointly held desire to significantly narrow the scope of information at issue so as to produce only the records truly of interest to Plaintiffs — was frustratingly delayed by EPA's inability to describe the types information contained in the documents Defendant had identified as responsive to the FOIA request so as to guide Plaintiffs' narrowing efforts. *See, e.g.*, Bahr Decl. at ¶ 28; *see also* Saxonhouse Decl. at ¶ 15; Plaintiffs' MOSJ Reply, dkt. # 43, at 5-7 (discussing issue).

Defendant had no reasonable basis in law for its actions leading up to and through this case. The Plaintiffs have met their burden of establishing that they are entitled to the award of attorney fees and costs.

## IV.  BASIS FOR REASONABLE FEES

Pursuant to 5 U.S.C. § 552(a)(4)(E), Plaintiffs have requested $162,041.06 in fees and expenses based on the attached detailed accounting of all costs of litigation and attorneys' fees. This represents expenses of litigation of $1,863.56 and a lodestar for attorneys' fees of $160,177.50.

The "lodestar" method is the product of reasonable hourly rates multiplied by the number of hours reasonably spent on the litigation. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also Long v. IRS,* 932 F.2d at 1313–14. If these two figures are reasonable, then there is a "strong presumption" that their product, the lodestar figure, represents a reasonable fee award. 932 F.2d at 1314 (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

14

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

1987)); *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (same).

The lodestar also includes compensation for time spent securing the fee award.[10] *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

The attorney fee lodestar amount of $160,177.50 in this case accurately represents a fair starting point for compensation, and is in fact somewhat conservative. The rates and number of hours submitted by attorneys and paralegal performing legal services for this action was necessary, proper, and reasonable.

### 1.   THE HOURLY RATES REQUESTED ARE REASONABLE.

Plaintiffs are seeking reimbursement for attorney David Bahr's time at hourly rates of $500, $550, 575, 600, and $650 for work performed in 2010, 2011, 2012, 2013 and 2014, respectively. Bahr Decl. at ¶ 21. For attorney Elena Saxonhouse, Plaintiffs seek the hourly rates of $350, 400, 425 and $450 for 2011, 2012, 2013 and 2014 work, respectively. *Id.* For senior paralegal Kathleen Krust, Plaintiffs seek the hourly rates of $ 150 for 2012 work. The following table summarizes Plaintiffs' claim for reimbursement:

| Name | Experience | Hourly Rate | Hours | Fees |
|------|-----------|-------------|-------|------|
| David A. Bahr | 24 yrs. | $500 - $650 | 218.0 | $127,737.50 |
| Elena Saxonhouse | 8 yrs. | $350 - $450 | 74.6 | $29,956.00 |
| Kathleen Krust (paralegal) | 10 yrs. | $125 - $200 | 16.5 | $2,475.00 |
| **TOTAL** | | | **309.5** | **$160,177.50** |

The hourly rates claimed by Plaintiffs' counsel are those charged by attorneys of comparable skill, experience, and reputation in this community for similar work. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (citing *Blum*, 465 U.S. at 895). It is well settled that in public interest cases, "judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on

---

[10] Plaintiffs reserve the right to seek their fees for this petition and reply briefing subsequently.

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

15

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

the open market." *Hensley*, 461 U.S. at 447; *Blum*, 465 U.S. at 894–95 (public interest attorneys entitled to rates charged by corporate attorneys).

Attorney Bahr has 24 years of litigation experience and has crafted a public records litigation practice specialty dating back 26 years to filing FOIA requests while still in law school. Bahr Decl. at ¶¶ 6, 9. He has litigated dozens of FOIA actions and lectured about FOIA at CLEs and other professional gatherings. *Id*. at ¶¶ 7, 9. He was recently appointed to be one of ten representatives of the requester community on the twenty-member Freedom of Information Act Advisory Committee, created under the auspices of the National Archives and Records Administration. *Id*. at ¶ 10. The Committee's purpose is to build upon "the expertise and valuable advice the Committee members will provide on issues related to improving the administration of the Freedom of Information Act." 79 Fed. Reg. 25626 - 25627 (May 5, 2014). Bahr's role is to help the Executive Branch improve the administration of FOIA and to rec-ommend legislative action, policy changes or Executive actions, among other matters. *Id*.

Additionally, he received the 2001 Sunshine Award issued by the Society of Professional Jour-nalists. The Award is presented to individuals that the Society determines have made "a significant con-tribution to public understanding and education about laws governing open records and meetings [and to] recognize outstanding efforts in advocacy under the Freedom of Information Act (FOIA) and state public records laws and personal courage in working to keep public information publicly available." *Id*. at ¶ 13. He has also been awarded the Kerry L. Rydberg Award for accomplishments in public interest public interest litigation by the 1999 Public Interest Law Conference at the University of Oregon Law School. *Id*.

Attorney Saxonhouse, although not a specialist in FOIA, has accomplished much in the eight years she has been a litigator. Before that, she clerked with United States District Court for the District of Columbia, was an Associate Attorney at Earthjustice's Washington, DC office, a fellow at the San Francisco law firm Shute, Mihaly & Weinberger, and is currently as a Staff Attorney with Sierra Club's

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS
16
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

Environmental Law Program, which she joined in 2008. She received a B.A. with honors from Yale University in 1999. Saxonhouse Decl. at ¶¶ 7-10. She is an experienced litigator with a broad range of experience in environmental and other public interest law.

Senior paralegal Krust began working as a paralegal in July 2004 and was promoted to Senior Paralegal in July 2013. Saxonhouse Decl. at ¶ 13. In her role as a Senior Paralegal, she provides advanced-level comprehensive litigation support to the Law Program and has an advanced level of knowledge and proficiency in all aspects of environmental litigation. *Id*.

Here, Plaintiffs have submitted the declarations of four highly respected California litigators with years of experience in both private and public interest practices— James Wheaton, Mike Axline, Brian Gaffney and Donald Mooney. All four attest that the rates charged by Plaintiffs' counsel are within the range of reasonable hourly rates awarded to counsel of similar skill and experiences in the San Francisco legal market and in court awards. For example, attorney Wheaton declares that:

> After calculating the ranges referenced above, I asked for and have reviewed the rates that are being requested in this motion. The hourly rates requested by plaintiffs for their attorneys are comfortably within or even below the ranges for reasonable rates charged by and awarded to attorneys of comparable experience in federal and state courts in the San Francisco legal market for the relevant years. In developing the data for the ranges in each year I did not know what specific hourly rates were being requested by Plaintiffs' counsel. I reviewed the specific hourly rates only after the ranges had been determined, in order to opine on whether the requested rates were below, within or above the ranges. As noted, in every case the requested rate is at the low end of the range, or actually below the range altogether, save for one data point referenced in footnote 2.[11]

Wheaton Decl. ¶ 15. Mr. Wheaton is a highly experienced litigator who has practiced "environmental and First Amendment law, both with public interest groups and in private practice for thirty years, [he has] focused on public interest, constitutional, nonprofit, and attorneys' fee law." *Id*. at ¶ 8. His declaration avers that he has "personally litigated dozens of fee-shifting petitions and appeals in

---

[11] For which he merely stated "I do not have data on any awards for a 'senior paralegal' for 2014, and so use the 2013 data as a [lower] surrogate." Wheaton Decl. ¶ 14, n. 2. However, as Plaintiffs are seeking compensation for senior paralegal Krust only at 2012 rates, Exhibit C at 1, this issue is immaterial.

over twenty-five years of practice. I have provided expert testimony regarding attorney's fees on at least a dozen occasions since 2000." *Id.* at ¶ 9. His litigation expertise has been widely recognized and he has been honored with a number of awards. *Id.* at ¶ 7.

Similarly, Plaintiffs' other expert fee declarants aver that the rates requested are either at or below San Francisco legal market levels. Axline Decl. at ¶ 7 (requested rates are "commensurate with the rates charged by other lawyers" with comparable experience or even "modest" by comparison); Gaffney Decl. at ¶¶ 10-11 (requested rates are "consistent with attorneys of similar skill and experience" and are thus "reasonable and appropriate for Plaintiff's counsel in the San Francisco, California legal market"); Mooney Decl. at ¶ 17 (averring that requested rates represent the "fair-market value" for the San Francisco region).

Plaintiffs have established that their requested hourly rates are commensurate with, or below, those commanded by similarly situated San Francisco attorneys and they should be awarded by the Court.

## 2. THE NUMBER OF HOURS CLAIMED BY PLAINTIFFS' IS REASONABLE.

Under federal fee-shifting statutes, Plaintiffs' counsel are entitled to be compensated "for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). As the declarations of Mr. Bahr and Ms. Saxonhouse discuss, the number of hours submitted by counsel performing legal services for this action, 309.5, *see* Bahr's Decl. at ¶ 28; Saxonhouse Decl. ¶¶ 19-23 (generally), was necessary, proper, and reasonable. The hours claimed by Plaintiffs' counsel here are described fully in their declarations and supporting contemporaneous time records. Bahr Decl. at ¶¶ 22-24 and Exhibits A, B & C; Saxonhouse Decl. at ¶¶ 19-22. As such, those hours are presumptively reasonable. *See Gates v. Gomez,* 60 F.3d 525, 534 (9th Cir. 1995).

Plaintiffs' loadstar amount of $160,177.50 is reasonable. Attorney Bahr observed that:

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

18

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

The amount of time devoted to the case was a function of many factors. For example, the parties engaged in two extended rounds of mid-litigation settlement discussions; the first of which produced an order establishing a binding schedule for a process that ultimately resulted in the release of over 44,000 pages of documents while the second finally generated the settlement agreement resolving the case. As noted by my co-counsel, much of the settlement efforts — which were keyed upon the Parties jointly held desire to significantly narrow the scope of information at issue so as to produce only the records truly of interest to Plaintiffs — was frustratingly delayed by EPA's inability to describe the types information contained in the documents Defendant had identified as responsive to the FOIA request so as to guide Plaintiffs' narrowing efforts. . . . Moreover, although Plaintiffs repeatedly requested an estimated completion date ("ECD — either in writing such as with Mr. Levin's April 26, 2010 email to EPA or in our May 7, 2010 administrative appeal, or through in-person requests to EPA staff — the Agency consistently refused to provide us with any idea of when to expect closure on our FOIA request. Defendant's consistent refusal to provide an ECD for the processing of Plaintiffs' FOIA request effectively denied them the ability to make an informed decision regarding the risk/reward calculation of proceeding to a decision on the merits versus agreeing to settle the case.

Moreover, the case involved full dispositive briefing and argument preparation (note that the summary judgment argument was vacated only two days prior to its scheduled date). . . . Moreover, resolution of final settlement discussions was delayed by a number of months due almost entirely to Defendant's difficulty in obtaining approval of settlement language that it had itself proposed.[12]

Bahr Decl. at ¶¶ 28-29. Ms. Saxonhouse also explains that:

The large majority of my time in this case was spent on settlement efforts, including Sierra Club's efforts to narrow its request. The effort to narrow the request was complicated by EPA's apparent inability to review and release documents by date or topic, as requested by Sierra Club, but only by the "confidentiality category" into which Luminant had placed the document. (EPA was withholding all of the documents still sought by Sierra Club on the basis of Luminant's "Confidential Business Information" or "CBI" assertions.) Because EPA had not yet determined whether Luminant's descriptions of what

---

[12] Additionally, counsel was not paid at market rates for their time in this case. Bahr Decl. at ¶ 26. Attorney Bahr represented Plaintiff on a discounted "low-bono"/contingency basis, *Id.*, and counsel Saxonhouse and paralegal Krust incurred their time as part of their normal employment by Sierra Club and will receive no additional benefit regardless any fee award in this case. Saxonhouse Decl. at ¶ 24. Therefore, counsel Bahr had no incentive to "pad" or "churn" his hours in this case because of the real possibility that he would not be fully compensated for his work whereas the Sierra Club employees derive no personal benefit from any fees awarded in this case. *Moreno v. City of Sacramento*, 534 Fed.3d. 1106, 1112 (9th Cir. 2008) ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases [such as this case] in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.").

was in each category were CBI (as claimed by Luminant), EPA could not describe to Sierra Club what was in each confidentiality category. This forced us to gain an understanding of the categories by reviewing the documents that Luminant had voluntarily allowed EPA to release to Sierra Club, but which had formerly been assigned to a "confidentiality category." Determining the nature of each confidentiality category required review of a voluminous set of documents, but this was a necessary step to be able to relay to EPA for the purposes of settlement whether or not we were interested in that category so EPA could in return provide an estimate of the time it would take to reach a CBI determination on the documents of interest. Rather than going through the documents we had obtained from EPA myself for this purpose, I asked Senior Paralegal Kathleen Krust to initially review them, in order to minimize attorney time spent on this litigation.

Saxonhouse Decl. at ¶ 15. "Where legal research issues arose . . . I again sought to minimize attorney time by assigning legal research tasks to student interns. Sierra Club is not seeking recovery for intern time." *Id*. at ¶ 16.

Moreover, Plaintiffs have applied aggressive "billing judgment" and deleted from the requested reimbursement 95.8 hours in time expended that they found to be duplicative or otherwise non-productive. *See, e.g.*, Exhibit C at 2; *see also,* Bahr Decl. at ¶ ¶ 23, 31; Saxonhouse Decl. at ¶ 22. This represents approximately 24% of the total time actually expended by Plaintiffs' legal team in this case.

The following table applies the hourly rates requested above to the time for which compensation is sought:

| David Bahr | Hourly Rate | Time Expended | Total by Year |
|---|---|---|---|
| (for 2010) | $500 | 0.4 | $200.00 |
| (for 2011) | $550 | 39.5 | $21,725.00 |
| (for 2012) | $575 | 118.1 | $67,907.50 |
| (for 2013) | $600 | 27.1 | $16,260.00 |
| (for 2014) | $650 | 33.3 | $21,645.00 |
| **Bahr Subtotal** | | | **$127,737.50** |
| | | | |
| Elena Saxonhouse | Hourly Rate | Time Expended | Total by Year |
| (for 2011) | $350 | 5.5 | $1,925.00 |
| (for 2012) | $400 | 53.1 | $21,240.00 |
| (for 2013) | $425 | 16 | $6,800.00 |
| **Saxonhouse Subtotal** | | | **$29,965.00** |
| | | | |
| Kathleen Krust | Hourly Rate | Time Expended | Total by Year |
| (for 2012) | $150 | 16.5 | $2,475.00 |
| **Krust Subtotal** | | | **$2,475.00** |
| **LODESTAR FEE TOTAL** | | **309.5** | **$160,177.50** |

*See, e.g.*, Exhibit C.

The hours that Plaintiffs are claiming are conservative. They have applied appropriate "billing judgment" in this matter. They should be fully compensated for the time requested herein.

### 3. OUT-OF-POCKET EXPENSES.

Costs of litigation are authorized in 5 U.S.C. § 552(a)(4)(E) and should be awarded in this case. Costs which are out-of-pocket expenses that an attorney would normally bill a fee-paying client are properly added to reasonable compensation in this case. The Ninth Circuit allows recovery of out-of-pocket expenses as part of attorneys' fees. *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990), *opinion amended*, 808 F.2d 1373 (9th Cir. 1987) (*citing, Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216, n. 7 (9th Cir. 1986); *see also, Kuzma v. I.R.S.,* 821 F.2d 930, 933 (2d Cir. 1987) (recognizing that the litigation cost provision of FOIA permits broader recovery than the taxable cost provision of 28 U.S.C. §1920). In *United Steelworkers,* the Court found that out-of-pocket litigation expenses are different from statutory expenses allowed under 28 U.S.C. § 1920. 796 F.2d at 407; *Kuzma*, 821 F.2d at 933. In *Chalmers*, the Court agreed with the District of Columbia Circuit in awarding out-of-pocket expenses as part of attorney fee awards under section 1988.[13] That court defined out-of-pocket expenses as "expenses incurred by an attorney which would normally be charged to a client." *Id*. Finally, the Ninth Circuit has also determined that the costs of photocopying, travel, and telephone expenses can be included as attorney fees. *Thornberry v. Delta Airlines, Inc.,* 676 F. 2d 1240, 1245 (9th Cir. 1982) *vacated on other grounds*, 461 U.S. 952 (1983) (*citing, Northcross v. Bd. of Education*, 611 F.2d 624, 639 (6th Cir. 1979); *Kuzma*, 821 F.2d at 933-34. Therefore these other costs should be allowed if the attorney's normal practice is to charge these expenses to his clients.

---

[13] In awarding travel costs to successful appellant, the court ruled that "Plaintiffs are entitled to their transportation costs as part of an award of fees under section 1988. Even though not normally taxable as cost, out-of-pocket expenses incurred by an attorney which would normally be charged to a paying client are recoverable as attorney's fees under section 1988." *Kuzma*, 821 F.2d at 933-34.

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

21

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

Plaintiffs have incurred $1,863.56 in costs in this case as follows:

|  | Amount Billed |
|---|---|
| Court Fees ($350.00 filing and $275.00 PHV) | $625.00 |
| Travel (airfare for Chambers settlement conf.) | $996.40 |
| Transportation (cab/BART fare for Chambers settlement conf.) | $45.00 |
| Lodging (for Chambers settlement conf.) | $96.60 |
| Dining (for Chambers settlement conf.) | $100.56 |
| **Totals** | **$1,863.56** |

Bahr Decl. at ¶ 32; Saxonhouse Decl. at ¶ 25. Therefore, the Court should grant the Plaintiffs all of their out-of-pocket expenses sought in this petition.

## V. CONCLUSION

Plaintiffs are entitled to an award of attorneys' fees and costs of $162,041.06 because they have "substantially prevailed" in this action. Plaintiffs have established eligibility and entitlement for the award of costs and fees. Similarly, Plaintiffs have established their loadstar basis for the amount requested. Supporting the requested hourly rates are the declarations of Plaintiffs' counsel, their exhibits as well as four attorneys with significant litigation experience in the San Francisco legal community. Accordingly, Plaintiffs should be awarded the full amount of costs and fees requested herein.

Respectfully declared and submitted for the Court's consideration, this date, June 9, 2014.

 /s/ David Bahr
David A. Bahr (Oregon Bar No. 90199)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439
davebahr@mindspring.com

PLAINTIFFS' PETITION FOR ATTORNEYS'
FEES AND COSTS

22

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439