David A. Bahr (Oregon Bar No. 90199)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439
davebahr@mindspring.com

Elena Saxonhouse (California Bar. No. 235139)
Sierra Club Environmental Law Program
85 Second St., 2nd Floor
San Francisco, CA 94105
(415) 977-5765
(415) 977-5793 (facsimile)
Elena.Saxonhouse@Sierraclub.org

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **THE SIERRA CLUB** and **ENVIRONMENTAL INTEGRITY PROJECT,**<br>        Plaintiffs,<br>    *vs.*<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br>        Defendant. | Case No. C-11-0846-MEJ<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:    October 2, 2014<br>Time:   10:00 a.m.<br>Place:  Courtroom B, 15th Fl.<br>Before: Hon. Maria-Elena James,<br>         U.S. Magistrate Judge |

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS
1
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.   DISCUSSION ............................................................................................................ 1

   1.   Plaintiffs Are Prevailing Parties and Thus Eligible for Attorney Fees. ............................... 1

   2.   Plaintiffs FOIA Request Serves a Public Interest and Their Interests in the Requested Information Supports Their Entitlement to Attorney Fees. ............................................... 3

   3.   Defendant Has Not Met its Burden to Demonstrate Reasonable Conduct in Processing Plaintiffs' FOIA Request. ...................... 8

   4.   Sierra Club is a Proper Party in this Case. ........................................................... 10

   5.   Plaintiffs' Time and Fees Were Necessarily and Reasonably Incurred in this Case. ........ 11

      A.   The Time Spent by Plaintiffs' Attorneys is reasonable. ............................................. 11

      B.   The Hourly Rates Requested for Plaintiffs' Attorneys are Reasonable. ...................... 14

III.   CONCLUSION ........................................................................................................ 15

**TABLE OF AUTHORITIES**

**Cases**

*Barrios v. CA. Interscholastic Fed.*, 277 F.3d 1128 (9th Cir., 2002) ........................................ 3

*Blum v. Stenson*, 465 U.S. 886 (1984) ..................................................................................... 15

*Bullfrog Films. Inc. v. Catto*, 815 F. Supp 338 (C.D. Cal 1993) ........................................... 13

*Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187 (D.C.Cir.2007) ................. 2

*Church of Scientology of California v. U.S. Postal Service,* 700 F.2d 486 (9th Cir. 1983) ..... 4

*Citizens for Responsibility & Ethics in Wash. v. DOJ*, 820 F. Supp. 2d 39 (D.D.C. 2011) ......... 1, 8

*Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir., 2008) ................................................................ 4, 6, 8

*Davy v. CIA*, 456 F.3d 162 (D.C. Cir. 2006) ........................................................................... 2

*Exner v. F.B.I.,* 443 F. Supp 1349 (S.D. Calf. 1978), *aff'd*, 612 F.2d 1202 (9th Cir. 1980) .......... 7

*Favish v. Office of Independent Council*, 217 F.3d 1168 (9th Cir., 1999) ................................ 8

*Gates v. Rowland*, 39 F.3d 1439 (9th Cir. 1994) ..................................................................... 14

*Geertson Seed Farms v. Johanns*, No. C 06–01075 CRB, 2011 WL 5403291 (N.D.Cal. Nov. 8, 2011) 15

*Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F.Supp.2d 1034 (E.D. Cal., 2012) ......... 2

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ............................................................................. 15

*Judicial Watch, Inc. v. F.B.I.*, 522 F.3d 364 (D.C. Cir., 2008) .................................................. 2

*McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987) ................ 7

*Moreno v. City of Sacramento*, 534 Fed.3d. 1106 (9th Cir. 2008) ........................................................ 13

*Muffoletto v. Sessions,* 760 F. Supp. 268 (E.D.N.Y. 1991) ............................................................. 7

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ...................................................................... 15

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ............................... 5

*Richardson v. Rest. Mktg. Assocs., Inc.*, 527 F.Supp. 690 (N.D. Cal. 1981) ...................................... 11

*Sorenson v. Concannon*, 161 F. Supp. 2d 1164 (D. Or. 2001) ......................................................... 11

*United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ......................... 14

*Wildlands CPR v. U.S. Forest Service,* 558 F.Supp.2d 1096 (D.Mont., 2008) ................................... 3

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS
ii
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

## I.   INTRODUCTION

Plaintiffs Sierra Club and Environmental Integrity Project hereby submit this reply memorandum in support of their petition for costs and attorneys' fees. As documented in the Supplemental Declaration of David Bahr, filed herewith, Plaintiffs have incurred additional time and expense since June 7, 2014, just before they filed the fee petition. Accordingly, Plaintiffs now seek **$180,271.06** in costs and attorney fees as the prevailing parties in this suit. Supplemental Bahr Decl. at ¶14.

Defendant Environmental Protection Agency ("EPA"), has objected, dkt. #90, to Plaintiffs' initial petition for costs and fees, dkt. #77. As explained in this Reply, Defendant's objections to Plaintiffs' fee petition are without foundation in law or fact and should be rejected by the Court. Plaintiffs respectfully request that this Court therefore grant Plaintiffs' petition for costs and attorneys' fees in full.

## II.   DISCUSSION

### 1.   PLAINTIFFS ARE PREVAILING PARTIES AND THUS ELIGIBLE FOR ATTORNEY FEES.

Defendant's primary argument against Plaintiffs' fee petition is that they are not eligible as a prevailing party. However, EPA mischaracterizes the consequences of the filing of this suit as well as applicable authority. The basic factors establishing Plaintiffs' fee eligibility are addressed in the fee petition, dkt. # 77, at 8-10. It cannot be contested that Plaintiffs obtained, in the Stipulated Order dated June 27, 2011, dkt #20, a judicially enforceable commitment that EPA disclose documents responsive to their FOIA request at a rate of 1,600 pages per month; a commitment that ultimately caused the release of over 44,000 pages of responsive records. Bahr Decl., dkt. # 78, at ¶ 28. This judicial order "changed the legal relationship of the parties" and was a direct result of Plaintiffs' complaint, which they would not have obtained without filing their suit. *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 820 F. Supp. 2d 39, 44 (D.D.C. 2011) ("CREW") (holding that "plaintiff had substantially prevailed on the basis of a joint stipulation and [scheduling] order because the order 'changed the legal relationship between [the plaintiff] and the defendant.'"); *see also Campaign for Responsible Transplantation v. FDA*,

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS
1
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

511 F.3d 187, 197 (D.C.Cir.2007) (when court adopts an order "requiring the agency to release docu-

ments, the legal relationship between the parties changes"); *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir.

2006) ("Davy I") (FOIA plaintiff "prevailed" on basis of joint stipulations approved by district court that

required production of document because they established "an 'enforceable judgment' on the merits of

his complaint"). "Even though the parties arrived at a mutually acceptable agreement, ... the order me-

morializing the agreement created the necessary judicial imprimatur for plaintiffs to be a prevailing

party." *Judicial Watch, Inc. v. F.B.I.*, 522 F.3d 364, 368 (D.C. Cir., 2008) (internal punctuation and cita-

tions omitted). Because the agency in *Judicial Watch* released the disputed documents after an order was

issued, and it released the documents pursuant to that order, plaintiffs were eligible for attorney fees. *Id*.

Accordingly, by securing the order mandating a specific manner and rate for the release of

44,000 pages of responsive documents, Plaintiffs obtained precisely the "judicially sanctioned change in

the legal relationship of the parties" required to establish prevail party status in this case.[1]

Similarly, the Stipulated Order by which this case was finally resolved imposed a judicially en-

forceable deadline for EPA to complete processing of Plaintiffs' follow-on FOIA. Settlement Agreement

Order, dkt. # 70, at ¶¶ 2-5. "Obtaining a settlement agreement when a case is brought under FOIA satis-

fies the 'substantially prevailed' requirement." *Hajro v. U.S. Citizenship & Immigration Servs.*, 900

F.Supp.2d 1034, 1041 (E.D. Cal., 2012) (citing *Davy v. CIA*, 456 F.3d at 164); *see also Barrios v. CA.*

---

[1] EPA contends that it was planning on releasing the documents all along and that their release subse-
quent to the filing of this suit was entirely coincidental. Resp., dkt. # 90, at 12. As noted above, this ar-
gument ignores the judicially enforceable change in the legal relationship of the parties created by the
Court's Order requiring document release at 1,600 per month. Moreover, Defendant's claim side-steps
its failure to provide Plaintiffs with any idea that document disclosure might be continuing or when to
expect completion of the process during the year leading up to the filing of this suit. EPA admits that it
was legally required to provide an estimated completion date ("ECD") for the request, that Plaintiffs re-
peatedly requested an ECD prior to filing suit and that it failed to provide an ECD. Joint Case Manage-
ment Conference Statement, dkt. # 15, at ¶ 2; *see also* discussion in Fee Petition, dkt. # 77, at 5-6. It is
disingenuous for Defendant to now suggest that Plaintiffs should have simply waited to obtain the in-
formation when the Agency repeatedly rebuffed their efforts to learn when, if ever, their request would
be finally resolved.

*Interscholastic Fed.*, 277 F.3d 1128, 1135-36 (9th Cir., 2002) (holding that a legally enforceable settlement agreement against a defendant establishes prevailing party status). Defendant complains that "[t]his argument fails because Plaintiffs always had the right to submit another FOIA request." Resp., dkt. # 90, at 10. When viewed against the extreme processing delays underlying this case, EPA's argument that it should have reasonably been expected to comply with FOIA's deadlines for the follow-on FOIA request in the absence of the judicially enforceable provisions of the Stipulated Order stretches credulity and the Court should reject it.

Finally, EPA argues that because the Settlement Agreement "specifically provides that it does not establish either of the Parties as a 'prevailing party' for purposes of assessing attorney fees and costs . . . Plaintiffs' argument that the provision nevertheless establishes them as a "prevailing party" cannot be justified." Resp., dkt. # 90, at 10. One of the cases cited by Defendant, *Wildlands CPR v. U.S. Forest Service,* 558 F.Supp.2d 1096 (D.Mont., 2008), considered exactly the same language in a consent decree resolving a FOIA case, and found that it had no bearing on whether the party that prevailed – as that term is defined by applicable law – could collect fees. The *Wildlands* court said:

> Likewise, the consent decree's language agreeing that the parties did not intend the decree to establish a prevailing party does not render the Act inoperable. The parties cannot circumvent the law by contract. The decree states that it "is not intended to designate either Party as 'prevailing party' for purposes of assessing attorney fees and costs, and is not and cannot under any construction be effective in doing so." The law, on the other hand, states that where a complainant has obtained relief through a consent decree, it has substantially prevailed and is therefore eligible for attorney fees. Here, the consent decree reflects the parties' understanding that entering it would not, by its terms, establish a prevailing party. *It did not need to because the Act does*.

*Wildlands CPR v. U.S. Forest Service,* 558 F.Supp.2d at 1100 (emphasis added).

Plaintiffs have established that they are the prevailing parties in this case and are thus eligible for attorney fees.

### 2. PLAINTIFFS FOIA REQUEST SERVES A PUBLIC INTEREST AND THEIR INTERESTS IN THE REQUESTED INFORMATION SUPPORTS THEIR ENTITLEMENT TO ATTORNEY FEES.

Regarding the four factors germane to a court's fee entitlement review, the "touchstone of a

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS

3

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA. A grudging application of this provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent." *Davy v. C.I.A.*, 550 F.3d 1155, 1158 (D.C. Cir., 2008) ("Davy II"). In cases such as this, where information is sought for a public purpose and the plaintiff is "a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information." *Church of Scientology of California v. U.S. Postal Service,* 700 F.2d 486, 494 (9th Cir. 1983). Ninth Circuit precedent in this area guides that courts "[sh]ould generally award fees if the complainant's interest in the information sought was scholarly or journalistic *or public-oriented." Long v. I.R.S.*, 932 F.2d 1309, 1316 (9th Cir. 1991) (emphasis added) (quoting *Church of Scientology* at 493, which quotes in turn S.Rep. No. 854, 93d Cong., 2d Sess. at 19 (1974)).

As noted in their fee petition, dkt. # 77, at 11, Plaintiffs are environmental organizations with a long history of engagement with the residents and communities in Texas affected by Luminant's coal-fired power plants. Plaintiff "EIP works to provide objective analysis of how the failure to enforce or implement environmental laws increases pollution and affects the public's health; to hold federal and state agencies, including the U.S. Environmental Protection Agency ("EPA"), and the Texas Commission on Environmental Quality ("TCEQ"), as well as individual sources of pollution, accountable for failing to enforce or comply with environmental laws; and to help individuals and communities obtain the protection of environmental laws." Levin Decl., dkt. # 89, at ¶ 3. "Plaintiffs sought the underlying documents in this case to monitor the Environmental Protection Agency's Clean Air Act investigation and enforcement efforts against Luminant's Martin Lake, Big Brown, and Monticello coal-fired power plants, and to gain a better understanding of the plants' operations and potential Clean Air Act violations." Saxonhouse Decl., dkt. # 79, at ¶ 3.

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS

4

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

The information sought in this action is therefore directly relevant to Plaintiffs' ability to effectively participate in, and provide public oversight of, Defendant's implementation of its CAA regulatory and enforcement programs, particularly as they pertain to Luminant's power plants. Levin Decl., dkt. # 89, at ¶ 4; Saxonhouse Decl., dkt. # 79, at ¶ 3. This type of public oversight of an agency's implementation of its regulatory authority enhances compliance with environmental protection laws. *See, e.g.*, Levin Decl., dkt. # 89, at ¶ 3; *see also* Saxonhouse Decl., dkt. # 79, at ¶ 4; Saxonhouse MOSJ Decl., dkt. # 34, at ¶¶ 4-11; Levin MOSJ Decl., dkt. # 35, at ¶¶ 4-8, 11-14. Both Plaintiffs have expressly averred that they have no commercial interests in the information sought in this case. Levin Decl., dkt. # 89, at ¶ 6; *see also* Saxonhouse Decl., dkt. # 79, at ¶ 5. Instead, "Plaintiffs' FOIA request sought to further the public's ability to participate in, and oversee, Defendant's implementation of its responsibilities under the Clean Air Act." Levin Decl., dkt. # 89, at ¶ 6.

Even to the extent that the information sought in this case might be used in litigation against non-governmental polluters, Plaintiffs would be acting as private attorney generals to enforce the CAA. Providing documents to public interest environmental groups to act as private attorney generals to enforce environmental laws itself serves the public interest. Congressional recognition of the public interest inherent in the enforcement of the CAA through citizen suits is evidenced by fee-shifting provision applicable when a citizen prevails in a CAA case against a polluter. "Congress enacted th[e fee-shifting] sections 'specifically to encourage citizen participation in the enforcement of the standards and regulations established under this Act,' and intended that section 'to afford . . . citizens . . . very broad opportunities to participate in the effort to prevent and abate air pollution." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986) (internal citations omitted). The aim of the fee-shifting provisions in this and other federal statutes is "to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." *Id.* at 565. The Supreme Court has held that by allowing fee-shifting in the enforcement of environmental statutes

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS

5

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

"Congress . . . urged the courts to 'recognize that in bringing legitimate actions under [the Clean Air Act] section citizens would be performing a public service and in such instances the courts should award costs of litigation to such party.'" *Id*. at 560 (quoting S. Rep. No. 91-1196, at 36, 38).]"Accordingly, notwithstanding Defendant's contrary argument, Resp., dkt. # 90, at 13, the FOIA requests at issue in this case served a public interest.

EPA further suggests that Plaintiffs have failed to use the information disclosed in this case and are therefore not entitled to attorney fees. *Id*. The factors relevant to a fee award under FOIA do not include whether the requestor ultimately found the released documents useful enough to publicize them. Courts have cautioned against improperly replacing judicial review of a requester's intent in filing a FOIA request with a hindsight focus on what an agency finally discloses as a reason to deny attorney fees. *See, e.g., Davy II*, 550 F.3d at 1162, n 3 ("Our dissenting colleague inappropriately shifts the focus from the request's topic and purpose to the specific content of the released documents."). In any event, the suggestion that the documents were never "used" is a misleading characterization. First, Plaintiffs have an active and broad effort to educate the public about the problems associated with coal-fired power plants in general,[2] and those operated by Luminant and its parent company Energy Future Holdings, in particular.[3]. Even if Plaintiffs have not publicly posted each of the 44,000 pages of documents obtained in this litigation — which was never their intention anyway — it is self-evident that that data they contain is being used to inform Plaintiffs' ongoing oversight and enforcement efforts described in the Levin and Saxonhouse declarations noted above.

Additionally, it must be recalled that a subset of the information sought in this matter was re-requested in the follow-on FOIA request provided for by the settlement order resolving this case and that

---

[2] *See, e.g.,* http://content.sierraclub.org/campaigns/beyond-coal,

[3] *See, e.g.,* http://content.sierraclub.org/coal/coalition/txu-energy/why-switch; http://content.sierraclub.org/press-releases/2013/11/unsealed-dept-justice-document-reveals-federal-case-against-luminant-coal.

6

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

61 of those documents are currently subject to a "reverse-FOIA" case filed by Luminant and thus not yet disclosed to Plaintiffs. *See* Fee Petition, dkt. # 77, at 8 n 6 (describing context).

Further, Defendant claims that Plaintiffs "sought third party information in this case to further a commercial benefit," namely, "as *a substitute* for civil discovery" supporting litigation against Luminant. Resp., dkt. # 90, at 14 (emphasis added). However, Plaintiffs had no discovery tool they could have used to investigate the potential Clean Air Act violations that had triggered EPA's information collection request against the company, which was the subject of the FOIA. Rather, seeking public documents from EPA served as an investigatory tool to uncover as yet unknown Clean Air Act violations. "The attorney fees provision of the [FOIA] has as its fundamental purpose the facilitation of citizen access to the courts to vindicate the public's statutory rights." *Exner v. F.B.I.,* 443 F. Supp 1349, 1351 (S.D. Calf. 1978), *aff'd,* 612 F.2d 1202 (9th Cir. 1980). EPA points to *Sierra Club v. Energy Future Holdings Corp. et al.,* No. 6:12-cv-108-WSS (W.D. Tex. Filed March 1, 2012), Resp., dkt. # 90, at 14, as grounds for its "substitute for civil discovery" accusation. However, the FOIA request triggering this litigation was submitted to EPA on February 25, 2010, *over two years prior to that case's filing. See, e.g., id.* at 1. Clearly the FOIA request cannot "substitute" for discovery in litigation that was not yet filed. Even if Plaintiffs ultimately uncovered EPA documents relevant to that case, which had not been revealed in discovery, there would be nothing improper about making use of that information.[4] *See supra* pp. 5-6 (discussing public interest in citizen enforcement of the Clean Air Act). While FOIA is certainly not intended to provide litigants an opportunity to evade a court's discovery rulings, nothing of the sort occurred here.

---

[4] Courts have repeatedly held that the use of information in litigation does not automatically trigger FOIA's "commercial use" provision. *See, e.g., McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1285 (9th Cir. 1987) (finding no commercial interest in records sought in furtherance of requesters' tort claim); *Muffoletto v. Sessions,* 760 F. Supp. 268, 277-78 (E.D.N.Y. 1991) (finding no commercial interest when records were sought to defend against state court action to recover debts).

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS
7
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

In addition, while Plaintiffs have made no secret of their efforts to use FOIA to enforce the Clean Air Act against private polluters in the public interest, the request served the equally important goal to facilitate their ability to effectively participate in, and provide public oversight of, EPA's implementation of its CAA regulatory and enforcement duties as they pertain to Luminant's power plants. *See, e.g.*, Saxonhouse Decl., dkt. # 79, at ¶ 4; *see also*, Saxonhouse MOSJ Decl., dkt. # 34, at ¶¶ 4-11; Levin MOSJ Decl., dkt. # 35, at ¶¶ 4-8, 11-14. This type of oversight of agency conduct is not a "private commercial interest"[5]; it is a long-recognized — and fundamental — purpose behind FOIA. "The statute is a commitment to 'the principle that a democracy cannot function unless the people are permitted to know what their government is up to.'" *Favish v. Office of Independent Council*, 217 F.3d 1168, 1171 (9th Cir., 1999) (internal citation omitted).

### 3. DEFENDANT HAS NOT MET ITS BURDEN TO DEMONSTRATE REASONABLE CONDUCT IN PROCESSING PLAINTIFFS' FOIA REQUEST.

In FOIA attorney fee contexts, the burden is always on an agency to demonstrate that its conduct is reasonable. *Davy II*, 550 F.3d at 1162-63; *CREW*, 820 F. Supp. 2d at 47 ("Significantly, the burden remains with the agency: The question is not whether Plaintiff has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after Plaintiff filed suit.") (quotation omitted). An "agency's failure even to respond [to a requester's inquiries] is hardly reasonable." *Id.* at 48 (also noting that failure to comply with FOIA's deadlines weighs in favor of fee entitlement).

The fee petition has already shown that EPA did not have a reasonable basis for its conduct in processing Plaintiffs' FOIA request. Dkt. # 77 at 13-14. However, even in responding to Plaintiffs'

---

[5] Indeed it is difficult to imagine what sort of financial interest Defendant might be alluding to as its argument pertains to CAA citizen suits where the citizen-plaintiff can obtain no monetary relief for itself; instead, the citizen-plaintiff is acting to protect the public interest just as are Plaintiffs in this case. Levin Decl., dkt. # 89, at ¶ 6; Saxonhouse Decl., dkt. # 79, at ¶ 5.

briefing in which Defendant's own admissions of unlawful conduct are noted, *e.g.*, EPA's acknowledgment that it unlawfully refused to provide an estimated completion date for the FOIA request, JCMS, dkt. # 15, at ¶ 2, and where its failure to reasonably comply with FOIA's decision deadlines was highlighted , dkt. # 77, at 13, Defendant still claims that "there is no dispute that the EPA acted in accordance with the FOIA and its regulations in this case." Resp., dkt. # 90, at 16. This statement is flatly inconsistent with EPA's own admissions.

In its briefing, EPA has also repeatedly — and falsely — claimed that Plaintiffs did not try to narrow the scope of their FOIA request. *See, e.g.*, EPA's MOSJ Reply, dkt. # 37, at 2; Resp., dkt. # 90, at 7, 16. As noted in great detail in Plaintiffs' summary judgment briefing, however, the Parties' settlement efforts were materially undermined by EPA's consistent inability to describe the types information contained in the documents Defendant had identified as responsive to the FOIA request so as to guide Plaintiffs' narrowing efforts. MOSJ Reply, dkt. # 43, at 5-7; *see also* Bahr Decl., dkt # 78, at ¶ 28; Saxonhouse Decl., dkt # 79, at ¶ 15. Plaintiffs consistently attempted to work with EPA to narrow the scope of their request but were prevented in doing so by the Agency's ongoing inability, or unwillingness, to describe the nature and content of the responsive documents. EPA's suggestion that the agency's delays were attributable to Plaintiffs' purported unwillingness to narrow their request is thus factually incorrect and does not support EPA's claim that it acted reasonably in processing the FOIA request.

EPA's claim of reasonableness in processing the FOIA request also falters upon examination of its processing of Plaintiffs' public interest fee waiver request. Just two days before Plaintiffs' summary judgment reply brief was due, and two years after the request had been initially filed, Defendants claimed they had just discovered that Plaintiffs had not requested a fee waiver for their FOIA request. EPA wielded its claim of a "missing fee waiver request" to halt further processing of Plaintiffs' FOIA request. *See*, EPA letter dated April 26, 2012, dkt. # 44-1, at 2. Plaintiffs refuted this claim in detail in their MOSJ Reply, dkt. # 43, at 7-9, as well as their response to EPA's Request for Leave to File a Sup-

plemental Declaration of Benjamin Harrison, dkt. # 49, demonstrating that they had in fact filed a fee

waiver request. Nonetheless, EPA maintained this position into the rest of the case despite being pro-

vided with clear evidence to the contrary, *See, e.g.*, Supplemental Bahr Decl. at ¶ 2. The fee waiver dis-

pute was an issue that materially hampered the Parties' settlement efforts and required Plaintiffs to incur

substantial time and effort to address. *See, e.g.,* September 14, 2012 letter to EPA's counsel, attached to

Supplemental Bahr Decl. as Exhibit J, addressing the application of equitable estoppel against the gov-

ernment in the context of the fee waiver issue. This episode provides an example of EPA's unreasonable

conduct.

### 4.   SIERRA CLUB IS A PROPER PARTY IN THIS CASE.

Defendant claims for the very first time in its response to the fee petition that Sierra Club is not a

proper party to this litigation. Resp., dkt. # 90, at 19. The following facts and judicial admissions clearly

refute this claim:

1.   EPA submitted to personal jurisdiction and venue in this Court based on Sierra Club's location in San Francisco. Answer ¶ 6 (admitting venue based on plaintiff Sierra Club's, not EIP's, location in San Francisco.) EIP is based in Washington, D.C. with an office in Austin TX (http://environmentalintegrity.org/contact). Plaintiff EIP has no presence in the Northern District of California therefore it could not independently establish venue in this judicial district.

2.   EPA did not dispute in its Answer that Sierra Club was a proper plaintiff. *See also* Answer ¶ 25 admitting "Plaintiffs" (plural) "timely appealed, via email, the adverse action embodied by EPA's 'initial denial' letter." Note that the appeal was explicitly submitted on behalf of both Sierra Club and EIP. This is judicial admission that Sierra Club a party to the FOIA request. *See also* Answer ¶ 26 admitting that by "letter dated June 8, 2010, EPA denied Plaintiffs' [plural] administrative appeal." As noted above, the appeal decision explicitly describes the initial request as having been submitted by both Sierra Club and EIP. *See also* Answer at ¶ 34, admitting that "As of the date this action was filed, the EPA had not issued a final determination on Plaintiffs' (plural) FOIA request."

3.   Defendant admitted that both Sierra Club and EIP "fully exhausted all administrative remedies required by FOIA." Answer, dkt. # 11, at ¶ 35 ("Defendant admits the allegations in Paragraph 35 of the Complaint."). Obviously, if Sierra Club was not a proper party to the FOIA request this cannot be admitted.

4.    On March 16, 2010, Ilan Levin sent EPA a letter "[o]n behalf of Environmental Integrity *and the Sierra Club*," to narrow the scope of the FOIA request that triggered this litigation." *See, e.g.*, Supplemental Declaration of Ilan Levin, filed herewith, at ¶ 3 (emphasis added); *see also* Exhibit

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS

10

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

E attached thereto, a true and accurate copy of the March 16, 2010 letter. That letter "accurately reflects the intention of Environmental Integrity Project and Sierra Club that the FOIA request was submitted to EPA on behalf of both organizations." Supplemental Declaration of Ilan Levin at ¶ 3.

5. Attached to the Supplemental Levin Declaration, as Exhibits F through I, are true and accurate copies of letters of transmittal by which approximately 44,000 pages of information were disclosed to Plaintiffs consequent to the Stipulated Order, dkt. # 20. Based on Plaintiffs' arrangement with EPA, these letters are addressed to Plaintiff Sierra Club and EPA provided the responsive information directly to Sierra Club. Clearly EPA would not be sending such documents to a non-party in this case.

6. EPA's June 8, 2010 denial of Plaintiffs' administrative appeal, *see, e.g.,* Second Harrison Decl., dkt. # 91, ¶ 6, explicitly stated it was based on a decision to partially deny "a FOIA request submitted *by the Sierra Club* and the Environmental Integrity Project." *See* Exhibit K, attached to the Supplemental Bahr Declaration filed herewith, at 1 (emphasis added).

The above noted facts and judicial admissions clearly establish that Sierra Club was a party to the FOIA request and that until it filed its opposition to Plaintiffs' fee petition, Defendant treated it as such.

### 5. PLAINTIFFS' TIME AND FEES WERE NECESSARILY AND REASONABLY INCURRED IN THIS CASE.

#### A.     The Time Spent by Plaintiffs' Attorneys is reasonable.

Defendant generally argues that the number of hours for which Plaintiffs seek compensation "is entirely unreasonable for a simple FOIA case." Resp., dkt. #90 at 20. Incredibly, the very first category of time Defendant chose to attack as "non-productive" is that related to the issue of the fee waiver addressed above. *Id*. Obviously none of this time would have been incurred by Plaintiffs' counsel but for the Agency's own erroneous assertion that the fee waiver request was "missing"; it is compensable.

Additionally, EPA attacks as "non-productive" time incurred pursuing settlement and seeking to involve Luminant in the settlement process. *Id.* at 20-21. However, time spent on negotiations — even if unsuccessful and even with third parties — is recoverable. *Sorenson v. Concannon*, 161 F. Supp. 2d 1164, 1169 (D. Or. 2001) ("the federal defendant asks this court to assume, contrary to common sense, that the extensive settlement negotiations between plaintiffs and the state yielded nothing of use to the ultimate resolution of the litigation. I decline[ ] to make that assumption. . . ."); *see also Richardson v. Rest. Mktg. Assocs., Inc.*, 527 F.Supp. 690, 700 n.5 (N.D. Cal. 1981) ("Defendants also argue that time

spent on settlement negotiations not be allowed. *In light of the strong public policy favoring settlement, the court considers this argument to be without merit*") (emphasis added). Moreover, as noted above and in Plaintiffs' fee petition memo, dkt. # 77, at 19-20, Defendant's continuing inability to inform Plaintiffs of the contents of the responsive records added significantly to the time and effort expended seeking a negotiated resolution of this case. The purpose of seeking to involve Luminant was such that information about what was in the documents could be shared more freely, thereby speeding a narrowed request and facilitating settlement. Supplemental Bahr Decl. at ¶ 4. Defendant agreed with this approach, but Luminant ultimately refused to participate. *Id*. Thus, although ultimately unsuccessful, it was not wasted time.

Defendant then attacks the time Plaintiffs incurred reviewing the documents disclosed consequent to the litigation. Resp., dkt. # 90, at 21. However, as already noted in the fee petition, dkt., # 77, at 19-20, this review was directly in support of the litigation and more specifically, the settlement efforts. Indeed a substantial amount of this time was directly consequent to EPA's failure to adequately describe the contents of its files responsive to Plaintiffs' FOIA request. Accordingly, Plaintiffs' staff reviewed the released materials:

> to gain an understanding of the categories by reviewing the documents that Luminant had voluntarily allowed EPA to release to Sierra Club, but which had formerly been assigned to a "confidentiality category." Determining the nature of each confidentiality category required review of a voluminous set of documents, but this was a necessary step to be able to relay to EPA for the purposes of settlement whether or not we were interested in that category so EPA could in return provide an estimate of the time it would take to reach a CBI determination on the documents of interest.

*Id*. at 20 (quoting the Saxonhouse Decl, dkt. # 79, at ¶ 15). Moreover, rather than personally reviewing the documents, Ms. Saxonhouse "asked Senior Paralegal Kathleen Krust to initially review them, in order to minimize attorney time spent on this litigation." *Id*. Additionally, Plaintiffs respectfully suggest that the 25.4 hours (of primarily paralegal time) Defendant identifies as related to document review is a

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

relatively modest amount considering that over 44,000 pages were involved.[6] Finally, clearly some amount of time was required to review documents produced in this context to ensure that EPA was properly complying with the document disclosure duties imposed by the Stipulated Order, dkt. # 20.

Defendant also challenges the nominal time (0.4 hr) expended by Plaintiffs counsel speaking to the press. Resp., dkt. # 90, at 23. However, courts have found such time compensable if, as here, it was incurred to further a client's litigation goals. *See, e.g., Bullfrog Films. Inc. v. Catto*, 815 F. Supp 338, 344 (C.D. Cal 1993) (time spent speaking with the press to further a client's litigation goals "was legitimately billed to the case and is reasonable"). EPA also challenges the 0.4 hrs incurred developing a joint prosecution agreement in this matter. Resp., dkt. # 90, at 23. This nominal amount of time was reasonably and necessarily incurred to protect the co-litigants' interest in this case and Defendant offers no rationale to support its exclusion from a fee award.

The 2.7 hours of time Defendant objects to on the ground that it was incurred drafting the follow-on FOIA request called for by the Settlement Agreement resolving this case, Resp., dkt. # 90, at 23, are properly billed here because the second FOIA was an integral component of the settlement of this matter and sought the same nature of information requested by the initial FOIA request.

Moreover, as noted in the fee petition, dkt. # 77, at 19 n. 12, because Plaintiffs' counsel was not paid at market rates, they had no incentive to 'pad' or 'churn their hours in this case because of the real possibility that they would never get paid." *Moreno v. City of Sacramento*, 534 Fed.3d. 1106, 1112 (9th Cir. 2008) (such counsel unlikely to spend excessive time working on a matters for which they may never be paid). Accordingly, the time incurred in this matter is presumptively necessary and reasonable.[7]

---

[6] Indeed, using EPA's proposed calculus which estimated that "only 10 minutes were needed to review each page" of the documents at issue in this case, EPA's MOSJ Reply, dkt. # 37, at 7, it would take Defendant 7,333.33 hours to review the same materials Plaintiffs covered in 25.4.

[7] Additionally, Defendant's objections to Plaintiffs' time completely ignores the aggressive "billing judgment" employed in this case by which 106.8 hours have been "no charged." Supplemental Bahr

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (internal quotations omitted). "Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. C 06–4884 SI, 2012 WL 273604, at *2 (N.D. Cal. Jan. 30, 2012). The generalized opinions of Defendant's attorney that Plaintiffs' counsel spent "excessive" time in winning this case falls short of the standard requiring that "evidence" be presented that directly challenges Plaintiff's declarations.

Plaintiffs' time is not excessive and Plaintiff "substantially prevailed" under FOIA's attorney fee provision. They should be awarded compensation for all the time sought herein.

**B.      The Hourly Rates Requested for Plaintiffs' Attorneys are Reasonable.**

If Defendant wishes to properly rebut Plaintiffs' four supporting fee declarants, it bears the "burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian,* 987 F.2d 1392, 1397-98 (9th Cir. 1992). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, just as in *United Steelworkers*, "Although the defendants disagreed with this evidence, *they did not support their arguments with any affidavits or evidence of their own regarding legal rates in the community*." *Id*. (emphasis added). Given that "the government offers no evidence to rebut [] declarations and the accompanying evidence showing that the requested rates" are reasonable, the Court should

---

Decl. at ¶¶ 7-8. Additionally, Plaintiffs are not seeking compensation for the approximate five hours of time Ms. Saxonhouse has expended on this case assisting with this filing. *Id*. at 9.

14                    BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

reject its challenge to the requested rates. *Nadarajah v. Holder*, 569 F.3d 906, 917-18 (9th Cir. 2009) (rejecting government challenge to requested rates in part on this basis); *see also Geertson Seed Farms v. Johanns*, No. C 06–01075 CRB, 2011 WL 5403291, at *9 (N.D.Cal. Nov. 8, 2011) (stating: "Because Defendants have not rebutted Plaintiffs' numerous declarations, which establish the reasonableness of the requested rates, the Court finds that Plaintiffs may recover fees at the market rates they seek.").

Moreover, Defendant suggests that Mr. Bahr's public-interest discounted hour rate of $150 that he charges Sierra Club somehow acts as a cap on what he may now seek as a fee award. Resp., dkt. # 90, at 24-25. This position was directly addressed — and rejected — by the United States Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984). There, the Court held that public interest attorneys toiling for reduced or no payment are entitled to rates charged by corporate attorneys. *Blum*, 465 U.S. at 894–95; *see also Hensley v. Eckerhart,* 461 U.S. 424, 447 (1983) ("judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market."). EPA's opposition to the well-documented and supported hourly rates sought by Plaintiffs in this case has no merit and should be rejected.

### III.  CONCLUSION

Plaintiffs have presented detailed and amply documented evidence that they are entitled to an award of attorneys' fees and costs in this case. Defendant's response is essentially an expression of opinion that ignores Plaintiffs' evidence and fails to include substantive objections to Plaintiffs' time or billing rates. On this evidentiary record, Plaintiffs should be awarded the full amount requested herein, **$180,271.06**.

Respectfully submitted this 8th day of September, 2014.

 /s/ David Bahr_____
David A. Bahr (Oregon Bar No. 90199)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
davebahr@mindspring.com

REPLY IN SUPPORT OF PLAINTIFFS' PETITION
FOR ATTORNEYS' FEES AND COSTS
15
BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439