1

2

3            UNITED STATES DISTRICT COURT

4            NORTHERN DISTRICT OF CALIFORNIA

5

6   THE SIERRA CLUB, et al.,                  Case No.  11-cv-00846-MEJ

            Plaintiffs,
7                                             **ORDER RE: PLAINTIFFS' PETITION**
8       v.                                    **FOR ATTORNEYS' FEES AND COSTS**

    UNITED STATES ENVIRONMENTAL             Re: Dkt. No. 77
9   PROTECTION AGENCY,

10          Defendant.

11

12                        **I.  INTRODUCTION**

13        Plaintiffs The Sierra Club and Environmental Integrity Project ("EIP") (collectively,

14   "Plaintiffs") filed a complaint on February 23, 2011, against Defendant United States

15   Environmental Protection Agency (the "EPA"), seeking the disclosure of certain government

16   documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*  Compl. ¶ 1,

17   Dkt. No. 1.  After the parties completed briefing cross-motions for summary judgment in May of

18   2012, they entered into settlement discussions and eventually agreed to settle the case.  Dkt. No.

19   69.  Now before the Court is Plaintiffs' Petition for Attorneys' Fees and Costs.  Dkt. No. 77

20   ("Mot.").  The EPA has filed an Opposition (Dkt. No. 90), and Plaintiffs have filed a Reply (Dkt.

21   No. 94).  The Court previously found this matter suitable for disposition without oral argument

22   (Dkt. No. 107) and now issues the following order.

23                        **II.  BACKGROUND**

24   A.      **Initial FOIA Request**

25        On February 25, 2010, Plaintiffs submitted a FOIA request to the EPA seeking information

26   received by the EPA through its requests for information under Section 114 of the Clean Air Act

27   ("CAA"), 42 U.S.C. § 7414, regarding Luminant Generation Company, LLC's ("Luminant")

28   Texas coal-fired power plants.  Jt. Stmnt. ¶ 2, Dkt. No. 15; Adams Decl. ¶ 3, Dkt. No. 28.  The

United States District Court
Northern District of California

1    request was submitted to the EPA via email dated February 25, 2010, and assigned the tracking

2    number 06-FOI-00244-10.  Jt. Stmnt. ¶ 2; Adams Decl. ¶ 3.  It comprised over 300,000 pages of

3    records that Luminant provided to the EPA in approximately 17 batches on a rolling basis over a

4    one and a half year period from September 2008 to February 2010.  Adams Decl. ¶ 3; Harrison

5    Decl. ¶ 12, Dkt. No. 45-1; Second Harrison Decl. ¶ 5, Dkt. No. 91.  By letter dated March 23,

6    2010, the EPA informed Plaintiffs that an extension to FOIA's 20-business day decision deadline[1]

7    was required due to "the need to search for, collect and appropriately examine a voluminous

8    amount of separate and distinct records involved in [Plaintiffs'] request."  Jt. Stmnt. ¶ 2.  The EPA

9    letter extended its decision deadline to April 9, 2010.[2]  *Id.*

10        A substantial portion of the information submitted by Luminant was marked as

11   confidential business information ("CBI").  Adams Decl. ¶ 3; Second Harrison Decl. ¶ 6.  As such,

12   the documents required special handling under EPA FOIA regulations.  *See* 40 C.F.R. §

13   2.204(d)(1); Adams Decl. ¶¶ 3-4.  As part of making a confidentiality determination, the EPA is

14   first required to provide notice to each affected business that it is in the process of determining

15   whether the information is entitled to confidential treatment and provide the business an

16   opportunity to submit comments to support the CBI claims.  Second Harrison Decl. ¶ 7.

17   Accordingly, on April 7, 2010, the EPA initially delivered responsive documents that were not

18   marked as CBI, along with a letter that, among other things, informed Plaintiffs that (1) certain

19   responsive records may be entitled to confidential treatment, (2) further inquiry by the EPA was

20   required before a final determination could be made regarding the releasability of additional

21   documents, (3) the EPA would consult with Luminant regarding the CBI claims, and (4) the

22   Office of Regional Counsel would issue a final confidentiality determination.  Adams Decl. ¶ 4; Jt.

23   Stmnt. ¶ 2.  Pursuant to its regulations under 40 C.F.R. § 2.204(d)(1)(ii), the EPA is required to

24   initially deny the FOIA request until a final confidentiality determination has been issued.  Adams

25

26   [1] FOIA requires an agency to issue a final determination resolving an information request within
     20 business days from the date of its receipt.  5 U.S.C. § 552(a)(6)(A)(i).  It also requires an
27   agency to provide "an estimated date on which the agency will complete action on the request."
     *Id.* § 552(a)(7)(B)(ii).
28   [2] FOIA allows a decision deadline extension of up to 10 business days if certain limited "unusual
     circumstances" are present.  5 U.S.C. § 552(a)(6)(B)(i).

*United States District Court*
*Northern District of California*

Decl. ¶ 4; Harrison Decl. ¶ 6.

On May 7, 2010, Plaintiffs timely appealed, via email, the adverse action embodied by the EPA's "initial denial" letter.  Jt. Stmnt. ¶ 2.  By letter dated June 8, 2010, the EPA denied this administrative appeal because EPA Region 6 Office of Regional Counsel was still in the process of completing its confidentiality determination on the approximately 300,000 pages of records.  *Id.*; Second Harrison Decl. ¶ 6.  Plaintiffs attempted, via a number of communications with the EPA, to discern when it intended to make a final determination on the continuing withholding of approximately 350,000 pages of information responsive to their FOIA request, but EPA did not provide "an estimated date on which the agency will complete action on the request," as required by FOIA, 5 U.S.C. § 552(a)(7)(B).  Jt. Stmnt. ¶ 2.

Meanwhile, pursuant to 40 C.F.R. § 2.204(d)(1) and (e), the EPA provided Luminant the opportunity to substantiate its confidentiality claims on over 300,000 pages of records.  The EPA's letters to Luminant of notice of opportunity to submit substantiation of its CBI claims were dated June 25, 2010 and November 8, 2010.  Adams Decl. ¶ 6.  Luminant was given 15 working days from receipt of the EPA's requests for substantiation, respectively, to provide its support for the CBI claims on the approximately 300,000 pages of records.  Second Harrison Decl. ¶ 8.  Luminant provided seven substantiation responses, totaling approximately 1,881 pages: (1) for the June 25 request for substantiation, it provided responses for July 21, July 26, September 3, October 29, and December 10, 2010; and (2) for the November 8 request, it provided responses for December 10 and 21, 2010.  Second Harrison Decl. ¶ 8; Second Adams Decl. ¶ 6, Dkt. No. 92.

**B.     Second FOIA Request**

On May 19, 2010, after the administrative appeal, the EPA received a separate FOIA request from attorney David Bahr on behalf of the Sierra Club for all communications between the EPA and Luminant regarding the initial February 25, 2010 request for documents.  Lane Decl. ¶ 5, Dkt. No. 27.  The request was assigned tracking number 06-FOI-00342-10.  *Id.*  On June 11, 2010, the EPA provided notice to the Sierra Club in accordance with 40 C.F.R. § 2.104(a), that it had no responsive records.  *Id.* ¶ 7.  The EPA's request for substantiation to Luminant was still in draft form during the pendency of the Sierra Club's request and had not yet been sent to Luminant.

Second Adams Decl. ¶ 4.  There is no indication that the Sierra Club appealed the EPA's June 11, 2010 response, and Plaintiffs' Complaint does not address the Sierra Club's request.  *Id.*

**C.    Procedural Background**

On February 23, 2011, Plaintiffs filed this action pursuant to FOIA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et. seq.  Compl. ¶ 1.  In addition to disclosure of documents, Plaintiffs sought declarations from the Court that: (1) the failure to disclose documents was unlawful under FOIA; (2) the EPA's determinations regarding which documents would be disclosed were untimely; (3) the EPA's determinations regarding appeal were untimely; (4) the EPA's actions constituted unlawful withholding and unreasonable delay pursuant to the APA; and (5) the EPA's decisions were arbitrary, capricious an abuse of discretion, and not in accordance with the law in violation of the APA.  *Id.* at 14.  Plaintiffs filed their Complaint two months after the EPA received its last substantiation response from Luminant on December 21, 2010.  Second Harrison Decl. ¶ 10.  The EPA maintains that it "was still evaluating and preparing the claim-withdrawn pages of information for release, while also continuing to review the seven substantiation responses and the over 250,000 pages of records still claimed as CBI."  *Id.*

Upon filing of the Complaint, the parties agreed to explore settlement via the Court's mediation program.  Dkt. No. 20.  As part of their stipulation, the parties agreed that the EPA would release all documents responsive to Plaintiffs' FOIA request for which the Luminant corporation had withdrawn its exemption claims by July 6, 2011, and the EPA agreed to disclose non-CBI documents at the rate of 1,600 pages per month.  *Id.* at 2.  During this time, Luminant withdrew its confidentiality claims on certain released pages, and the EPA was able to produce five additional disclosures during the pendency of this lawsuit.  Second Harrison Decl. ¶¶ 11-12.  In sum, over 44,000 pages of responsive documents were released pursuant to the initial FOIA request.  Adams Decl. ¶ 9; Bahr Decl. ¶ 28, Dkt. No. 78.  The parties were unable to resolve their dispute regarding the remaining approximately 300,000 pages of documents; thus the Court set a summary judgment briefing and hearing schedule.  Order dated Nov. 21, 2011, Dkt. No. 23.

After summary judgment was fully briefed, the undersigned vacated oral argument and ordered the parties into her Chambers to meet and confer.  Order dated May 15, 2012, Dkt. No. 50.

1   From this second round of settlement discussions, the EPA agreed to timely process a revised

2   FOIA request that targeted information in the EPA's possession at that time and which was the

3   type of information Plaintiffs had been seeking in their original request.  Saxonhouse Decl. ¶ 17,

4   Dkt. No. 79.  Pursuant to the parties' Settlement Agreement and Release, they agreed to the

5   following: (1) the EPA would cease work on FOIA Request 06-FOI-00244-10 as the request was

6   withdrawn; (2) Plaintiffs would narrow and submit a new FOIA request; (3) after Plaintiffs

7   submitted a new request, the EPA would process the request consistent with its regulations under

8   40 C.F.R. part 2, subpart B, and within 140 days of receiving the new FOIA request; (4) Plaintiffs

9   would dismiss this action; and (5) Plaintiffs released the EPA from liability for claims related to

10  the litigation.  Settlement Agreement, Dkt. No. 69.

11          In response to the revised request, the EPA released 61 of the 65 documents it identified as

12  responsive and non-exempt under FOIA.[3]  Bahr Decl. ¶ 30.  Plaintiffs therefore stipulated to the

13  dismissal of this case, and the Court so ordered on March 3, 2014.  Stipulated Dismissal and

14  Order, Dkt. No. 72.

15          Plaintiffs filed the present motion for attorneys' fees and costs on June 9, 2014.  Dkt. No.

16  77.  In their motion, Plaintiffs maintain that they have prevailed in this action "because their suit

17  caused the release of over 44,000 pages of records responsive to their [FOIA] request."  Mot. at 1.

18  Plaintiffs further argue that their "agreement to dismiss their case while over 300,000 pages of

19  additional information remained to be processed by [the EPA] was expressly conditioned on the

20  Agency's settlement promise to swiftly complete the processing of a second FOIA request by a

21  date certain, an obligation Defendant satisfied," and that "[t]hese events would not have occurred

22  without the filing of this action and they materially benefitted the Plaintiffs' and the public's

23  oversight of EPA's . . . regulatory and enforcement programs."  *Id.*  They seek $187,906.06 in

24  attorneys' fees and costs.  Bahr Sec. Suppl. Decl. ¶ 9, Dkt. No 108.

25  _____

26  [3] On April 25, 2014, Luminant commenced an action under the APA for judicial review of the
    EPA's adverse determination and to prevent the release of its information claimed as CBI.  *See*

27  *Luminant Generation Co., LLC v. U.S. EPA*, 4:14-cv-00172 [Dkt. No. 1] at ¶¶ 1, 19 (E.D. Tex.,
    Sherman Division); Second Harrison Decl. ¶ 16.  To date, the Sierra Club has not received any of

28  the 61 records responsive to FOIA Request EPA-R6-2014-000290.  Second Harrison Decl. ¶ 16.
    Luminant's lawsuit against the EPA is still pending.

United States District Court
Northern District of California

### III.  LEGAL STANDARD

The fee-shifting provision of FOIA states that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "Substantially prevailed" in this context means that a "complainant has obtained relief through either . . . a judicial order, or an enforceable written agreement or consent decree; or . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* Fee and cost awards are not automatically awarded to a prevailing party under FOIA. *See Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983). Rather, plaintiffs "must present convincing evidence" that they are both eligible for an award of attorney's fees and that they are entitled to such an award. *Id.* at 489, 492; *see also Long v. U.S. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991) ("In order to receive an award of fees, a prevailing party in a FOIA action must demonstrate both eligibility for and entitlement to such a recovery.").

The Ninth Circuit has crafted a two-step process for determining whether a party may be awarded fees and costs under 5 U.S.C. § 552(a)(4)(E).  To be *eligible* for an award, a party must show both that "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information," and that "(2) the filing of the action had a *substantial causative* effect on the delivery of the information."  *Church of Scientology*, 700 F.2d at 489 (emphasis in original).

Once a court deems a party eligible to recover fees and costs, it then exercises its "discretion to determine whether the plaintiff is *entitled* to fees."  *Or. Natural Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009) (emphasis added).  Entitlement to an award of fees under FOIA is a separate analysis; a "determination of eligibility does not automatically entitle the plaintiff to attorney's fees."  *Church of Scientology*, 700 F.2d at 489.

If a court determines that a party is both eligible and entitled to receive fees, that party "must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed."  *Long*, 932 F.2d at 1313-14.  If these two figures are reasonable in light of the difficulty of the case and the skill of the attorneys involved, there is a "strong presumption" that their product "represents a reasonable award."  *Id.* at 1314.  A court

United States District Court
Northern District of California

may revise upward or downward the resulting "lodestar figure" if "factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Id.*[4]    However, once a party is deemed both eligible and entitled to fees, "the award must be given and the only room for discretion concerns the reasonableness of the amount requested."[5] *Id.* A district court awarding fees and costs "should provide a detailed account of how it arrive[d] at appropriate figures for the number of hours reasonably expended and a reasonable hourly rate." *Id.*

## IV. DISCUSSION

### A.    Standing

As a preliminary matter, the EPA raises for the first time in its Opposition the issue of Sierra Club's standing to bring this case.  Specifically, the EPA argues that Sierra Club lacks standing because it was not a requesting party to the initial FOIA request (06-FOI-00244-10).  Opp'n at 19.  The EPA notes that Sierra Club made a separate FOIA request (06-FOI-00342-10) on May 19, 2010, and argues that Sierra Club is therefore not entitled to attorneys' fees and costs related to the initial February 25, 2010, FOIA request.  *Id.*

In response, Plaintiffs assert that the EPA acknowledged Sierra Club as a proper party to this lawsuit by: (1) submitting to personal jurisdiction of this Court based on Sierra Club's

---

[4] The *Long* Court cited with approval twelve factors that may be considered in revising a fee award.  They are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  932 F.2d at 1314 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  These factors may, however, overlap to some degree with the "lodestar figure" if they served as a basis for the calculation of that initial amount.  *Id.* at 1314 n.4.

[5] A court may reduce the amount of hours used to calculate a fee award "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  *Chalmers* examined an award of fees and costs under the fee-shifting provision for civil rights actions provided by statute under 42 U.S.C. § 1988.  The Ninth Circuit cites approvingly to *Chalmers* and other § 1988 cases in discussing the metrics of fee-shifting under FOIA.  *See, e.g.*, *Long*, 932 F.2d at 1314.  Indeed, *Rosenfeld v. United States*, 859 F.2d 717, 724 (9th Cir. 1988) explicitly holds that FOIA and § 1988 are "comparable" where awards of attorney's fees are concerned.

United States District Court
Northern District of California

location in San Francisco; (2) admitting in its Answer that Plaintiffs had timely appealed the

EPA's initial denial letter; (3) admitting that Plaintiffs had exhausted all administrative remedies

required by FOIA; (4) receiving communications regarding the FOIA request from Plaintiffs'

attorney, Ilan Levin, on behalf of the Sierra Club and EIP; (5) providing responsive information

regarding the initial FOIA request directly to Sierra Club; and (6) explicitly naming Sierra Club as

a party to the request in its denial letter.  Reply at 10-11.

       1.   <u>Legal Standard</u>

       Standing is required in order to confer subject matter jurisdiction upon federal courts under

Article III of the Constitution.  It is "the threshold question in every federal case."  *Warth v.*

*Seldin*, 422 U.S. 490, 498 (1975).  The Supreme Court has stated that the standing requirement

limits federal court jurisdiction to actual controversies so that the judicial process is not

transformed into "a vehicle for the vindication of the value interests of concerned bystanders."

*Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S.

464, 473 (1982).  To satisfy the standing requirements imposed by the Constitution, a plaintiff

must show that (1) it has suffered an injury in fact that is concrete, particularized, and actual or

imminent; (2) the injury is fairly traceable to the defendant; and (3) it is likely to be redressed by a

favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167,

180-81 (2000).

       Under FOIA, a party is deemed to have suffered an injury when the government agency

fails to respond to a FOIA request in a timely manner.  *Gilmore v. U.S. Dep't of Energy*, 33 F.

Supp. 2d 1184, 1189 (N.D. Cal. 1998) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992)).  Thus, any person who submits a FOIA request has standing to bring a FOIA challenge in

federal court if the request is denied in whole or part.  *United States v. Richardson*, 418 U.S. 166,

204 (1974).  However, a party must be adequately identified in the FOIA request to have standing.

*Barragan v. Bd. of Governors of Fed. Reserve Sys.*, 2012 WL 1535820, at *2 (C.D. Cal. Apr. 30,

2012) (quoting *Three Forks Ranch Corp. v. Bureau of Land Mgmt., Little Snake Field Office*, 358

F. Supp. 2d 1, 3 (D.D.C. 2005)).  "The identity of the requester is required under FOIA so that the

government has notice of the party or parties seeking the information."  *Menasha Corp. v. U.S.*

United States District Court
Northern District of California

1    *Dep't of Justice*, 2012 WL 1034933, at *3 (E.D. Wis. Mar. 26, 2012).

2          2.      Application to the Case at Bar

3          Although Sierra Club was not named in the initial request, the Court finds that the

4    correspondence between the EPA and Plaintiffs, and the EPA's subsequent actions in this case,

5    sufficiently identify Sierra Club as an interested party to the initial FOIA request (06-FOI-00244-

6    10).

7          In *Menasha*, an attorney submitted a FOIA request to the Department of Justice ("DOJ")

8    seeking documents on behalf of two entities.  2012 WL 1034933, at *1.  However, the attorney

9    failed to mention that the documents were being submitted on behalf of any particular entity and

10   instead listed himself as the sole requestor.  *Id.*  After the court ordered the documents released,

11   the plaintiffs sought attorneys' fees.  *Id.* at *2.  The DOJ opposed the fee petition, arguing that the

12   plaintiffs lacked standing to bring the claim because neither was mentioned in the FOIA request.

13   *Id.* at *3.  The court disagreed and looked to the correspondence between the parties to determine

14   whether the plaintiffs had standing.  *Id.*  It observed that there were at least four communications

15   between the DOJ and the plaintiffs which noted that the request was being submitted on their

16   behalf.  *Id.*  Based on this correspondence, the court found the DOJ's position unconvincing,

17   stating, "[i]f Defendant truly believed Plaintiffs lacked standing to bring the request, it should

18   have asserted that in response to the request itself."  *Id.*

19         In *Olsen v. U.S. Dep't of Transp. Fed. Transit Admin.*, Olsen's attorney submitted a FOIA

20   request to the Federal Transit Administration, but failed to state that the request was made on his

21   behalf.  2002 WL 31738794, at *2 fn.2 (N.D. Cal. Dec. 2, 2002).  Despite this, the court found that

22   any uncertainty as to the requester's identity was resolved during the administrative appeals

23   process, when the agency had acknowledged Olsen as the requester in its denial letter.  *Id.*  Thus,

24   although not named in the initial request, the court held that Olsen had standing.  *Id.*

25         In contrast, when a party is not adequately identified in a FOIA request and there is no

26   correspondence between the parties indicating that the agency was on notice of the party, courts

27   have held that the party lacks standing.  *See Barragan*, 2012 WL 1535820, at *2.  In *Barragan*, the

28   plaintiff's attorney submitted a FOIA request to the Federal Reserve System on behalf of Barragan

United States District Court
Northern District of California

9

and putative class members, but did not mention plaintiff's name or state that he was acting on plaintiff's behalf. *Id.* The court found that the plaintiff lacked standing to bring a FOIA claim because she was unnamed in the FOIA request. *Id.* at *2. Although the plaintiff attempted to rely on the court's holding in *Menasha*, the court found the comparison unavailing because there was no correspondence between the attorney and agency that named the plaintiff or stating that the request was made on the plaintiff's behalf. *Id.* at *2 n.3.

In the present case, despite Sierra Club being unnamed in the initial FOIA request, the Court finds that the EPA fully acknowledged Sierra Club as an interested party to the request and has continually treated them as such. In a follow-up letter dated March 16, 2010, Plaintiffs expressly stated that the request was submitted on behalf of EIP *and* Sierra Club. Levin Suppl. Decl., Ex. E, Dkt. No. 95. On June 8, 2010, the EPA sent Plaintiffs a denial letter denying the FOIA request "*submitted by Sierra Club* and the Environmental Integrity Project." Bahr Supp. Decl., Ex. K, Dkt. No. 96 (emphasis added). The EPA never disputes in its denial letter that Sierra Club was a party to the request. *Id.* To the contrary, like the defendant in *Olsen*, the EPA explicitly identifies Sierra Club as a party. *Id.*

Further, the EPA continued to treat Sierra Club as a party to the request when it repeatedly sent responsive documents directly to Sierra Club. The dates of these responses range from June 1, 2011 until April 26, 2012. *See* Sec. Harrison Decl., Exs. B; E-G. In the responses sent to Sierra Club, the EPA specifically referenced the initial FOIA request number (06-FOI-00244-10). *See id.* Additionally, since the initiation of this suit, the EPA has continually recognized Sierra Club as a party to the initial FOIA request. In its Answer, the EPA admits to this district being a proper venue based on Sierra Club's principal place of business in San Francisco. Answer ¶ 6, Dkt. No. 11.

Although the EPA argues that Sierra Club failed to exhaust its administrative remedies with respect to the second FOIA request, it acknowledges that Sierra Club sought the identical information in its May 19, 2010 FOIA request that was sought in the initial February 25, 2010 request. Opp'n at 19. The EPA states, "[t]he request sought documents regarding communications between EPA and Luminant regarding EIP's February 25, 2010 requests for

10

documents." *Id.*  Given that it was the EPA that referenced the initial FOIA request number and explicitly named Sierra Club in the denial letter, the Court finds that Sierra Club exhausted its administrative remedies.

Thus, based on the EPA's correspondence with Plaintiffs, its decision to send responsive documents directly to Sierra Club, and its subsequent actions in this case, the Court finds that the EPA had notice that Sierra Club sought the information in the initial FOIA request.  Accordingly, both Plaintiffs meet the standing requirements.

**B.      Eligibility**

As noted above, a party has "substantially prevailed" under FOIA when it obtains "relief through either . . . a judicial order, or an enforceable written agreement or consent decree; or . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).

Plaintiffs argue that they are eligible for an award of attorney's fees and expenses pursuant to 5 U.S.C. § 552(a)(4)(E)(ii)(II) because they have substantially prevailed in this lawsuit through a "voluntary or unilateral change in position" by the EPA after the suit was filed that caused the release of over 44,000 pages of documents responsive to their FOIA request.  Mot. at 8.  Plaintiffs also argue that, in exchange for their stipulation to dismiss the case, the EPA entered into a quid pro quo agreement to complete processing of a subsequent information request by a date certain. *Id.* at 8-9.

In response, the EPA argues that Plaintiffs have not obtained the type of relief contemplated under FOIA.  Opp'n at 9.  Specifically, the EPA contends that there has been neither a determination on the merits nor any finding by this Court that the EPA is liable on any of Plaintiffs' claims, and therefore there has been no judicial order. *Id.*  The EPA further argues that Plaintiffs incorrectly argue that they are "prevailing parties" because, although the parties entered into an agreement for Plaintiffs to dismiss the case if the EPA processed a subsequent request, "Plaintiffs always had the right to submit another FOIA request, and the Settlement Agreement did not change the legal relationship of the parties." *Id.* at 9-10.  Thus, "EPA's agreement to process a FOIA request within the parameters required by the law is not the sort of promise that justifies a

United States District Court
Northern District of California

11

conclusion that the Plaintiffs have prevailed." *Id.* at 10. The EPA also notes that the Settlement Agreement dealing with the new FOIA complaint provides that it does not establish either of the parties as a "prevailing party" for purposes of assessing attorney fees and costs. *Id.* (citing Settlement Agreement ¶ 4 ("This clause of the Settlement Agreement does not establish either of the Parties as a 'prevailing party' for purposes of assessing attorney fees and costs, and is not and cannot under any construction be effective in doing so.")).

The EPA also argues that Plaintiffs have not obtained relief through "a voluntary or unilateral change in position" as (1) there is no change in position by the EPA, and (2) Plaintiffs did not obtain relief because of any such change. *Id.* Specifically, the EPA maintains that Plaintiffs' Complaint was premature because it was still diligently processing Luminant's responses (the last substantiation was received in late December 2010) when Plaintiffs filed suit two months later in February 2011. *Id.* at 11. The EPA further argues that Plaintiffs are incorrect to assert that it changed its position and agreed to release over 44,000 pages of records only after Plaintiffs filed suit; rather, documents were released only after the EPA was able to process Luminant's responses to the EPA's requests for substantiation in which Luminant withdrew its confidentiality claims on the released pages. *Id.*

Finally, the EPA argues that there is no causal connection between the EPA's position and the release of documents. *Id.* at 12. It contends that "[t]he fact that Luminant withdrew its confidentiality claims covering the information is the only catalyst that led to the release." *Id.* It maintains that when an intervening event outside the EPA's control results in the release of records, there is not a change in agency position under FOIA. *Id.*

Because the Court finds that Plaintiffs are eligible on the former ground (relief obtained through a judicial order or an enforceable written agreement or consent decree), it need not reach the latter. The record reflects that on June 27, 2011, the Court approved the parties' stipulation regarding mediation and briefing schedules. Order, Dkt. No. 20. As part of that Order, the Court required the EPA to release to Plaintiffs "all documents responsive to their FOIA request for which the Luminant corporation has withdrawn claims that they are exempt from disclosure" by July 6, 2011, and required the EPA to release documents at the rate of "1,600 pages every four

weeks, until the process is completed."  *Id.* at 2.  Even if this is not identical to the relief sought in their Complaint, this judicial order still "changed the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 605 (2001) (substantially prevailing by judicial order means "judicially sanctioned change in the legal relationship of the parties").

Although the parties agreed on the deadlines, the fact that the Court required production by a specified date changed the legal relationship between the parties and therefore qualifies Plaintiffs as eligible for fees.  *See Davy v. C.I.A.*, 456 F.3d 162, 165 (D.C. Cir. 2006) (joint stipulation granted plaintiff "some relief on the merits of his claim" and therefore "changed the 'legal relationship between [the plaintiff] and the defendant'" (quoting *Buckhannon*, 532 U.S. at 604) (alteration in original)); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 820 F. Supp. 2d 39, 44 (D.D.C. 2011) (scheduling order requiring production by a specified date qualifies plaintiff as eligible for fees, even if schedule adopted by court was proposed by the defendant agency).  Just as in those cases, the June 27, 2011 scheduling order in this case changed the legal relationship between the parties because prior to its issuance the EPA "was not under any judicial direction to produce documents by specific dates; the . . . order changed that by requiring the Agency to produce all responsive documents by the specified dates."  *Davy*, 456 F.3d at 166. "If the Agency failed to comply with the order it faced the sanction of contempt."  *Id.*; *see also Judicial Watch v. F.B.I.*, 522 F.3d 364, 367-70 (D.C. Cir. 2008) (following *Davy* and finding plaintiff to be a substantially prevailing party on basis of joint stipulation and order that required documents to be released by date certain).  Thus, "[e]ven though the parties arrived at a mutually acceptable agreement, . . . the order memorializing the agreement created the necessary judicial imprimatur for plaintiffs to be a prevailing party."  *Judicial Watch*, 522 F.3d at 368 (internal punctuation and citations omitted).  Further, even if Plaintiffs did not achieve all relief sought in their Complaint, it is sufficient that Plaintiffs have "succeed[ed] on any significant issue in litigation, achieving some of the benefits the parties sought in bringing the suit").  *Edmonds v. F.B.I.*, 417 F.3d 1319, 1326-27 (D.C. Cir. 2005); *Citizens for Responsibility*, 820 F. Supp. 2d at 44.

United States District Court
Northern District of California

1    The EPA argues that Plaintiffs cannot have prevailed because the Settlement Agreement

2    dealing with the new FOIA complaint provides that it does not establish either of the parties as a

3    "prevailing party" for purposes of assessing attorney fees and costs.  Opp'n at 10.  Specifically,

4    paragraph 4 of the Settlement Agreement provides as follows: "[t]his clause of the Settlement

5    Agreement does not establish either of the Parties as a 'prevailing party' for purposes of assessing

6    attorney fees and costs, and is not and cannot under any construction be effective in doing so."

7    Dkt. No. 70.  However, this language does not render FOIA inoperable.  *Wildlands CPR v. U.S.*

8    *Forest Serv.*, 558 F. Supp. 2d 1096, 1100 (D. Mont. 2008) (finding plaintiff substantially

9    prevailed, even though parties' consent decree included language agreeing that the parties did not

10   intend the decree to establish a prevailing party).  The parties cannot circumvent FOIA by

11   contract.  *Id.* ("Here, the consent decree reflects the parties' understanding that entering it would

12   not, by its terms, establish a prevailing party.  It did not need to because the Act does.").

13   The Court finds that Plaintiffs obtained relief through the parties' written agreement, and

14   therefore, pursuant to 5 U.S.C. § 552(a)(4)(E)(ii), Plaintiffs have "substantially prevailed" and are

15   eligible to receive a fee award under FOIA.

16   **C.     Entitlement**

17   If a plaintiff demonstrates eligibility for fees, the district court may, in the exercise of its

18   discretion, determine that the complainant is entitled to an award of attorney fees.  *Long*, 932 F.2d

19   at 1313.  In exercising its discretion, the district court must consider four criteria: (1) the public

20   benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3)

21   the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's

22   withholding of the records had a reasonable basis in law.  *Id.* (citations omitted).  These four

23   criteria are not exhaustive.  *Id.*  Additionally, the court may take into consideration "whatever

24   factors it deems relevant in determining whether an award of attorney's fees is appropriate."  *Id.*

25   (internal quotations and citation omitted).  Courts look to the four factors described in *Long* as a

26   guide to exercising their discretion, keeping in mind "the basic policy of the FOIA to encourage

27   the maximum feasible public access to government information."  *Nationwide Bldg. Maint., Inc. v.*

28   *Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977); *see also Church of Scientology*, 700 F.2d at 494.

1          1.      Public Benefit

2          The public benefit factor takes into account the "degree of dissemination and the likely

3   public impact that might result from disclosure." *Church of Scientology*, 700 F.2d at 493.  An

4   award of attorneys' fees is disfavored when it merely subsidizes private concerns.  *Id.* (citing *Blue*

5   *v. Bureau of Prisons*, 570 F.2d 529, 533-34 (5th Cir. 1978)).  However, "[a] public benefit may

6   result even though the specific document is for plaintiff's sole use."  *Id.*

7          Plaintiffs argue that their work as environmental organizers creates benefits which

8   naturally flow to the public.  Mot. at 5-6.  They contend that public health is compromised by

9   pollutants discharged into the environment by companies who fail to comply with the CAA.  *Id.* at

10  11.  Plaintiffs further assert that the information sought allows for public oversight and

11  participation in ensuring enforcement and compliance with environmental laws.  *Id.*

12         In its Opposition, the EPA argues that no public benefit has been conferred because

13  Plaintiffs failed to disseminate the documents they obtained to the public.  Opp'n at 13.  The EPA

14  further argues that absent evidence proving dissemination, Plaintiffs are in pursuit of their own

15  institutional agenda.  *Id.*  at 13-14.  In response, Plaintiffs argue that actual publication is

16  irrelevant so long as the information is being used to fuel Plaintiffs' efforts to seek compliance

17  with environmental laws.  Reply at 6.

18         "Congress enacted § 304 of the Clean Air Act specifically to encourage 'citizen

19  participation in the enforcement of standards and regulations established under this Act,' S.Rep.

20  No. 91-1196, p. 36 (1970), and intended the section 'to afford . . . citizens . . . very broad

21  opportunities to participate in the effort to prevent and abate air pollution.'"  *Pennsylvania v. Del.*

22  *Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986) *supplemented*, 483 U.S. 711

23  (1987) (citing 1 Leg. Hist., p. 138 (Senate Consideration of the Report of the Conference

24  Committee, Dec. 18, 1970) (remarks of Sen. Eagleton)).  With this legislative intent in mind,

25  FOIA's provision for attorneys' fees recognizes "a public interest group seeking information to

26  further a project benefitting the general public."  *Davy v. C.I.A.*, 550 F.3d 1155, 1158 (D.D.C.

27  2008).

28         Here, it is undisputed that Plaintiffs are nonprofit public interest groups organized to alert

United States District Court
Northern District of California

1    the public of issues concerning environmental and health risks.  Plaintiffs' effort to inform the

2    public of pollutants exposed to the air by noncompliant companies undoubtedly confers a benefit

3    on the public.  *See Campaign for Responsible Transplantation v. U.S. Food and Drug Admin*., 593

4    F. Supp. 2d 236, 241 (D.D.C. 2009) (finding the public interest prong favors a nonprofit group

5    designed to alert the public of health risks); *Del. Valley Citizens' Council*, 478 U.S. at 560

6    ("Congress found that Government initiative in seeking enforcement under the Clean Air Act has

7    been restrained . . . and urged the courts to recognize that in bringing legitimate actions under this

8    section citizens would be performing a public service and in such instances the courts should

9    award costs of litigation to such party." (internal citation and quotations omitted)).

10       Although the EPA argues that no public benefit has been conferred because Plaintiffs did

11   not disseminate the documents, the Court finds that this ignores the broader purpose served by

12   disclosure.  *See O'Neil, Lysaght & Sun v. Drug Enforcement Admin.*, 951 F. Supp. 1413, 1424

13   (C.D. Cal. 1996).  In *O'Neil*, the plaintiffs sought release of documents from the Drug

14   Enforcement Agency regarding the misconduct and abusive practices of an informant.  *Id.* at 1415.

15   The information sought was for use in a criminal case related to the plaintiffs' client.  *Id.* at 1420.

16   The court held that using the documents solely for a private purpose is not dispositive in

17   determining whether a public benefit is served, reasoning that the actual information sought "need

18   not be of public interest as long as there is a public benefit from the fact of its disclosure." *Id.* at

19   1423.  The court recognized a public benefit in urging government compliance with statutory

20   functions. *Id.*

21       Similarly here, the Court finds Plaintiffs' failure to disseminate the documents they

22   obtained is not dispositive in determining whether their efforts served a public benefit.  Given the

23   purpose of Plaintiffs' organizations to oversee and enforce compliance with the CAA, the Court

24   finds that Plaintiffs provide a significant public benefit.  Further, as Plaintiffs point out, even if

25   they have not publicly posted each of the 44,000 pages of documents obtained in this litigation, it

26   is evident that the data they contain is being used to inform Plaintiffs' ongoing oversight and

27   enforcement efforts.  Reply at 6.  Thus, the public benefit factor weighs in favor of Plaintiffs'

28   entitlement to attorney's fees and costs.

2.      Commercial Benefit and Nature of Plaintiffs' Interests

The commercial benefit to the party resulting from disclosures and the nature of the plaintiffs' interest are closely related and often considered together.  *Church of Scientology*, 700 F.2d at 494.  In general, "[i]f either commercial benefit will inure to the plaintiff from the [obtained] information or plaintiff intends to protect a private interest, . . . an award of attorney's fees is not recoverable."  *Id.*  Conversely, "where plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information."  *Id.*  Ninth Circuit precedent instructs courts evaluating these two factors that they "should generally award fees if the complainant's interest in the information sought was . . . public-oriented."  *Long*, 932 F.2d at 1316 (quoting *Church of Scientology*, 700 F.2d at 496 n.6).

In its Opposition, the EPA argues that Plaintiffs had ulterior motives in seeking information about Luminant.  Opp'n at 14.  Specifically, the EPA asserts that Plaintiffs' FOIA request was initiated for the purpose of pursuing civil action against Luminant, and that Plaintiffs abused FOIA by using it as a tool for civil discovery.  *Id.* at 14-15.  The EPA further suggests that Plaintiffs' litigation history with Luminant establishes an incentive to seek judicial relief for their own commercial benefit.  *Id.* at 14.

In response, Plaintiffs contend that the FOIA request was used as an investigatory tool to determine compliance with the CAA.  Reply at 7.  Plaintiffs assert that there is no private commercial benefit to be gained by providing the public with information to which it has a right.  *Id.* at 8.  Plaintiffs further assert that there is nothing improper about using information they obtained that they may not have otherwise had access to via the discovery process.  *Id.* at 7.

"The Ninth Circuit has held, where a plaintiff is a 'nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information.'"  *Am. Civil Liberties Union of N. Cal. v. Drug Enforcement Agency*, 2012 WL 5951312, at *4 (N.D. Cal. Nov. 8, 2012) (citing *Church of Scientology*, 700 F.2d at 494).  In contrast, the commercial benefit factor weighs heavily against a fee award when the plaintiff "undertook [the] FOIA request for decidedly commercial purposes."  *Hersh & Hersh v. U.S. Dep't of Health and Human Servs.*, 2008 WL 2725497, at *2 (N.D. Cal. July 10, 2008) (denying a fee

award where the plaintiff used FOIA to obtain documents solely for the purpose of litigating a separate private lawsuit against a third party company).

Here, the Court finds that Plaintiffs do not have any commercial interests in the documents requested. Sierra Club is an environmental organization dedicated to educating the public on health problems that arise from environmental pollutants. Compl. ¶ 9. EIP is a nonprofit organization that oversees compliance of environmental laws. *Id.* ¶ 10. Further, Plaintiffs were not pursuing a separate private lawsuit against Luminant at the time they initiated the FOIA request. To allege that Plaintiffs intended civil action at the outset of their FOIA request, without supporting evidence, is speculation. Thus, as the EPA has provided no evidence supporting its assertion that Plaintiffs have received a commercial benefit from their FOIA request, the Court finds that these factors weigh in favor of Plaintiffs' entitlement to attorney's fees and costs.

3.      Reasonable Basis in Law

In analyzing the third factor, courts consider "whether the government's withholding of the records sought had a reasonable basis in law." *Church of Scientology*, 700 F.2d at 492. The denial of a FOIA request must have a colorable basis in law and not merely for the purpose of frustrating the requester. *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988 (N.D. Cal. 2012) (citations omitted). The burden is on the government to demonstrate that its conduct is reasonable. *Davy*, 550 F.3d at 1162-63.

In their Motion, Plaintiffs argue that the EPA unlawfully refused to provide an estimated completion date for the FOIA request. Mot. at 14. Plaintiffs further argue that EPA's failure to describe the type of information contained within the targeted documents frustrated their attempts to narrow the scope of the request. *Id.*

In its Opposition, the EPA maintains that it did not withhold documents, and any delay that occurred was a result of Luminant's confidentiality claim. Opp'n at 15. The EPA argues it needed to allow time for Luminant to substantiate its claim, which in turn resulted in an initial denial of Plaintiffs' claim. *Id.* at 15-16. The EPA further argues that the records sought were voluminous and that deciphering which records were confidential was a labor-intensive and time-consuming process, which was done with limited staff resources. *Id.* at 16. Additionally, the EPA

United States District Court
Northern District of California

1  claims its efforts were stifled by Plaintiffs' unwillingness to narrow their claim to help expedite

2  the process.  *Id.*

3  　　　In their Reply, Plaintiffs argue that they did not refuse to narrow the scope of their FOIA

4  request.  Reply at 9.  Plaintiffs assert their attempt to narrow the scope was met with the EPA's

5  unwillingness to describe the nature and content of the responsive documents.  *Id.*  They further

6  assert that the EPA halted processing of the FOIA request by falsely relying on a claim that

7  Plaintiffs failed to submit a fee waiver request.  *Id.*

8  　　　Based on the record before it, the Court finds that the EPA's initial response was in

9  accordance with the statute,[6] in that it fell within the allotted time period.  The EPA received

10  Plaintiffs' FOIA request on February 25, 2010, and responded on March 23, 2010.  Jt. Stmnt. ¶ 2.

11  In its response, the EPA requested an extension[7] due to "the need to search for, collect and

12  appropriately examine a voluminous amount of separate and distinct records involved in

13  [Plaintiffs'] request."  *Id.*  Again, the EPA responded within the specified time period, informing

14  Plaintiffs on April 7, 2010 that their request would be initially denied because Luminant claimed

15  the documents in question were classified as CBI.  *Id.*  The EPA properly withheld the information

16  originating from Luminant in order to determine the validity of Luminant's confidentiality claim,

17  pursuant to FOIA exemption four.[8]

18  　　　There is no dispute that the EPA was under an obligation to substantiate Luminant's

19  confidentiality claim.  Regardless of which type of confidentiality is asserted, the focus should

20  always be on whether the source of the information spoke with the understanding of

21

22  _____

　[6] 5 U.S.C. § 552(a)(6)(A) requires that "[e]ach agency, upon any request for the records made . . .

23  shall determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the
receipt of any such request whether to comply with such request and shall immediately notify the

24  person making such request of such determination and the reasons therefor, and the right of such
person to appeal to the head of the agency any adverse determination."

25  [7] 5 U.S.C. § 552(a)(6)(B)(i) prescribes that in "unusual circumstances . . . the time limits
prescribed in . . . clause (i) . . . of subparagraph (A) may be extended by written notice to the

26  person making such request setting forth the unusual circumstances for such extension and the
date on which a determination is expected to be dispatched. No such notice shall specify a date

27  that would result in an extension for more than ten working days."
[8] EPA relies on exemption 5 U.S.C. § 552(b)(4), which reads, "[t]his section does not apply to

28  matters that are trade secrets and commercial or financial information obtained from a person and
privileged or confidential."

United States District Court
Northern District of California

confidentiality, not whether the document is generally thought to be confidential.  *Inst. for Policy Studies v. C.I.A.*, 885 F. Supp. 2d 120, 151 (D.D.C. 2012) (citing *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)).  However, the Court finds that the EPA acted unreasonably when it failed to inform Plaintiffs of an estimated completion date while it substantiated Luminant's confidentiality claim.  Although there is no definitive deadline under FOIA exemption four, this does not mean the exemption is permanent in nature.  *Africa Fund v. Mosbacher*, 1993 WL 183736, at *8 (S.D.N.Y. May 26, 1993).  In substantiating Luminant's claim, the EPA was statutorily obligated to aid Plaintiffs in expediting their FOIA request.[9]  While the Court recognizes the EPA's challenge in reviewing the voluminous records, the statute cannot be construed to provide an indefinite period for substantiating a confidentiality claim.  Additionally, the EPA acted unreasonably in failing to communicate and work with Plaintiffs to create an agreed upon completion date.

Prior to filing the original FOIA request, Plaintiffs were working informally with the EPA in an effort to obtain information related to Luminant's compliance with the CAA.  *See* Levin Decl. in Supp. of Pls.' Mot. for Summ. J. ¶¶ 5-7, Dkt. No. 35.  Plaintiffs attempted, through informal dealings dating back to May 2009, to obtain the documents informally from the EPA and directly from Luminant.  *Id.* ¶ 6.  After the informal dealings failed, Plaintiffs brought a formal FOIA request.  *Id.* ¶ 8.  After repeated efforts on the part of Plaintiffs to communicate with the EPA, an estimated completion date for their request was still undetermined.  *See* Bahr Decl. in Supp. of Pls.' Mot. for Summ. J. ¶¶ 8-9, Dkt. No. 33.  After issuing the initial denial letter, the EPA directed Plaintiffs to its website to check the status of their request.  Plaintiffs repeatedly accessed the status website and were unable to ascertain an estimated date because their request number was unlisted.  *Id.* ¶ 9, Ex. E.  On June 8, 2010, Plaintiffs were informed that the EPA was denying their FOIA request.  Second Harrison Decl. ¶ 6.  From that date until they filed their

---

[9] 5 U.S.C. § 552(a)(6)(B)(ii) instructs that "the agency shall notify the person making the request if the request cannot be processed within the time limit specified un that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request. To aid the requester, each agency shall make available its FOIA Liaison, who shall assist in the resolution of any disputes between the requester and the agency."

United States District Court
Northern District of California

1    Complaint in February 2011, Plaintiffs made repeated efforts to communicate with EPA to

2    expedite their requests.  Bahr Decl. ¶ 7.

3           Given this background, the Court finds that the EPA did not provide Plaintiffs with

4    sufficient information or support to aid in their efforts to expedite Plaintiffs' request.  Further, the

5    documents that the EPA did provide to Plaintiffs were so heavily redacted that Plaintiffs could not

6    determine the subject matter to which they should narrow the scope of their request.  *See* Simmons

7    Decl., Ex. 2, Dkt. No. 29.  Additionally, Plaintiffs' attempts to check the status of their FOIA

8    request online were unfruitful because their FOIA case was unlisted on the EPA's website.  Thus,

9    after eight months of unsuccessful attempts to communicate with the EPA regarding the status of

10   their FOIA request, Plaintiffs were warranted in bringing suit.  *Campaign for Responsible*

11   *Transplantation*, 593 F. Supp. 2d at 245 (finding agency's eight month delay was unreasonable).

12          Based on this analysis, the Court concludes the EPA has failed to meet its burden of

13   showing an objectively reasonable basis in law for the delay.  *Davy*, 550 F.3d at 1163 ("failing to

14   explain the basis for deferring its response" to a FOIA request "is exactly the kind of behavior the

15   provision was created to combat").  Therefore, this factor also weighs in favor of Plaintiffs, and

16   the Court finds that they are entitled to an award of attorneys' fees and costs.

17   **D.      Reasonableness of Fee Request**

18          Having concluded that Plaintiffs are "both eligible for and entitled to recover fees, the

19   award must be given and the only room for discretion concerns the reasonableness of the amount

20   requested."  *Long*, 932 F.2d at 1314.  In making this assessment, the Court turns to Plaintiffs' fee

21   bill and scrutinizes the "reasonableness of (a) the number of hours expended and (b) the hourly fee

22   claimed.  If these two figures are reasonable, then there is a 'strong presumption' that their

23   product, the lodestar figure, represents a reasonable award."  *Id.* at 1313-14 (internal quotation

24   marks omitted).  The Ninth Circuit has instructed the Court to "provide a detailed account of how

25   it arrives at appropriate figures for the number of hours reasonably expended and a reasonable

26   hourly rate."  *Id.* (internal citations and quotations omitted).  However, in light of the fact that

27   "awarding attorneys' fees to prevailing parties . . . is a tedious business," the court "should

28   normally grant the award in full" if the party opposing the fee request "cannot come up with

United States District Court
Northern District of California

specific reasons for reducing the fee request."  *Moreno v. City of Sacramento*, 534 F.3d 1106,

1116 (9th Cir. 2008).

Plaintiffs have submitted several declarations in support of their fees request.  *See* Dkt.

Nos. 78-83, 96, 108.  The information contained in the declarations can be summarized as follows:

David A. Bahr
- 2010: 0.4 hours at $500 per hour = $200.00
- 2011: 39.5 hours at $550 per hour = $21,725.00
- 2012: 118.1 hours at $575 per hour = $67,907.50
- 2013: 27.1 hours at $600 per hour = $16,260.00
- 2014: 73 hours at $650 per hour = $47,450.00

Total Hours: 258.1          Total Fees Requested: $153,542.50

Elena Saxonhouse
- 2011: 5.5 hours at $350 per hour = $1,925.00
- 2012: 53.1 hours at $400 per hour = $21,240.00
- 2013: 16 hours at $425 per hour = $6,800.00

Total Hours: 74.6          Total Fees Requested: $29,965.00

Kathleen Krust (Paralegal)
- 16.5 hours at $150 per hour = $2,475.00

Plaintiffs also request costs totaling $1,923.56.  Thus, Plaintiffs seek a total award of

$187,906.06.

Plaintiffs maintain that the hourly rates claimed by counsel are those charged by attorneys

of comparable skill, experience, and reputation in this community for similar work.  Mot. at 15.

They argue that the hours they are claiming are conservative and that they have applied

appropriate "billing judgment," deleting approximately 24% of the total time actually expended by

Plaintiffs' legal team in this case.  *Id.* at 20.

The EPA objects to Plaintiffs' fee request as unreasonable, arguing that they "did not

accomplish anything worthy of an award for attorneys' fees," and "have included multiple

categories of hours that are not compensable under the FOIA."  Opp'n at 20.

    1.     Number of Hours Expended

For the purposes of calculating the 'lodestar' figure, the Court has discretion in

determining the number of hours reasonably expended on a case.  *Chalmers*, 796 F.2d at 1212; *see*

United States District Court
Northern District of California

*also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that a district court has discretion in determining the amount of a fee award which is "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters").  The fee applicant bears the burden of "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433, 437.  Reasonably expended time is generally time that "could reasonably have been billed to a private client." *Moreno*, 534 F.3d at 1111.  To this end, the applicant must exercise "sound billing judgment" regarding the number of hours worked, and a court should exclude from a fee applicant's initial fee calculation hours that were not "reasonably expended," such as those incurred from overstaffing, or "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433.

Given the scope of this case and the detailed nature of the billing records submitted by Plaintiffs' counsel, the number of hours proposed by Plaintiffs for inclusion in the initial lodestar figure appears reasonable.  Accordingly, the Court turns to the EPA's objections.

> a.     *Waiver Issue, Settlement, and Time Spent Pursuing Luminant's Involvement*

As part of their request, Plaintiffs seek $4,845 (9.4 hours) for a "Fee Waiver Issue" and $64,170 (141.1 hours) for fees attributed to "Settlement."  Bahr Decl., Ex. C.  The EPA argues that the Court should exclude this as "nonproductive time" because it did not result in furthering the lawsuit in any way and was "expended on issues on which plaintiff did not prevail."  Opp'n at 20-21.  The EPA maintains that the settlement agreement clearly states that the settlement does not deem either of the Plaintiffs a "prevailing party" for purposes of attorneys' fees under FOIA.  *Id.* at 21.  However, as discussed above, the Court finds that Plaintiffs obtained relief through the parties' written agreement, and therefore, pursuant to 5 U.S.C. § 552(a)(4)(E)(ii), Plaintiffs have "substantially prevailed" under FOIA.

The EPA also argues that Plaintiffs should not be reimbursed for time pursuing Luminant to be involved in the case.  Opp'n at 21.  However, the EPA does not dispute that all parties agreed to try to involve Luminant in the settlement efforts so that information about what was in the documents could be shared more freely, thereby speeding a narrowed request and facilitating

settlement.  Bahr Suppl. Decl. ¶ 4.  The EPA agreed with this approach, but Luminant ultimately refused to participate.  *Id.*  Thus, although ultimately unsuccessful, it does not appear that these negotiations were nonproductive time.  Moreover, time spent on negotiations—even if unsuccessful and even with third parties—is still recoverable.  *Sorenson v. Concannon*, 161 F. Supp. 2d 1164, 1169 (D. Or. 2001) ("the federal defendant asks this court to assume, contrary to common sense, that the extensive settlement negotiations between plaintiffs and the state yielded nothing of use to the ultimate resolution of the litigation.  I decline[ ] to make that assumption."); *see also Richardson v. Rest. Mktg. Assocs., Inc.*, 527 F. Supp. 690, 700 n.5 (N.D. Cal. 1981) ("Defendants also argue that time spent on settlement negotiations not be allowed.  In light of the strong public policy favoring settlement, the court considers this argument to be without merit.").

Accordingly, the Court finds that Plaintiffs' request for fees related to the waiver issue and settlement are reasonable.

### b.     Post-Production Document Review

Next, the EPA argues that the Court should deduct $7,980 (25.4 hours) from fees requested by Plaintiffs for the time spent reviewing documents after they were produced.  Opp'n at 21-22; Bahr Decl., Ex. A at 24 and Ex. B at 1-2.  Specifically, the EPA argues that even if the Court determines that Plaintiffs prevailed on their FOIA procedural claim, the time spent reviewing the documents requested is not related to the claim on which they prevailed.  Opp'n at 21.  The EPA contends that such review is post-relief activity, separate from litigation.  *Id.* at 21-22.

The Court agrees that Plaintiffs are not entitled to recover for time spent reviewing the documents they instituted this lawsuit to obtain.  As Plaintiffs received, at least in part, the relief they sought when the EPA produced the documents, the time they expended reviewing the documents was is properly characterized as post-relief activity, separate from the litigation.  *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011) (Review of documents "is simply the price of making [a FOIA] request."); *see also Steenland v. C.I.A.*, 555 F. Supp. 907, 911 (W.D.N.Y. 1983) (compensation for work performed after records were released "would assess a penalty against defendants which is clearly unwarranted").

United States District Court
Northern District of California

Plaintiffs maintain that the Court should permit fees for the time incurred reviewing the documents because it "was directly in support of the litigation and more specifically, the settlement efforts."  Reply at 12.  However, Plaintiffs provide no authority in support of their position.  Regardless, it is undisputed that Plaintiffs would have had to expend this time if the EPA timely produced the documents without litigation; "the cost of reviewing documents produced in response to a FOIA request is simply the price of making such a request."  *Citizens for Responsibility & Ethics in Wash.*, 825 F. Supp. 2d at 231.  Therefore, the Court finds that Plaintiffs should not recover the $7,980 they claim for reviewing the documents after they were produced.

c.      *Reduction to Account for Plaintiffs' FOIA Claims*

The EPA argues that the Court should reduce any award because only Counts I and II of Plaintiffs' Complaint are eligible for recovery under FOIA.  Opp'n at 22.  In their Complaint, Plaintiffs brought three causes of action, the first two under FOIA and the third under the APA. Compl. ¶¶ 39-65.  Even if Plaintiffs prevailed on their FOIA claims, the EPA argues that Plaintiffs are not eligible for attorneys' fees under one fee statute for claims brought under another statute. Opp'n at 22.  The Court agrees.  *See Forest Park II v. Hadley*, 408 F.3d 1052, 1059-60 (8th Cir. 2005) (success on a Declaratory Judgment Act claim did not qualify for an award of attorneys' fees under civil rights fee shifting statute, 42 U.S.C. § 1988).  However, the EPA does not cite to any billing records from Plaintiffs that are specific to the APA claim.

Further, the Court recognizes that in litigation that involves more than one claim, "unrelated claims [must] be treated as if they have been raised in separate lawsuits, and therefore no fee may be awarded for services on unsuccessful claim."  *Hensley*, 461 U.S. at 434-35. However, in some cases

> claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 435.  Here, the Court finds that Plaintiffs' claims for relief involve such a common core of facts, and counsels' time was devoted generally to the litigation as a whole, with no billing requests related specifically to the APA claim.  As such, the EPA's argument is without merit.

### d.    Media Relations

The EPA argues that the Court should not permit Plaintiffs to recover fees charged in connection with media relations.  Opp'n at 23 (citing Bahr Decl., Ex. A at 11 (requesting 0.2 hours for "press inquiry re. EPA's answer and background info; rev. answer/exhibit re same" and 0.2 hours for "Exchange email w/Elena S. re. her contact w/media and FOIA's deadline provisions and EPA's regs. re. confidentiality determinations.")).  However, courts have found such time compensable if, as here, it was incurred to further a client's litigation goals.  *See, e.g.*, *Bullfrog Films, Inc. v. Catto*, 815 F. Supp. 338, 344 (C.D. Cal. 1993) (time spent speaking with the press to further a client's litigation goals "was legitimately billed to the case and is reasonable").

### e.    Joint Prosecution Agreement

Plaintiffs also billed 0.4 hours for draft joint prosecution agreements between Plaintiffs, the EPA, and Luminant.  Bahr Decl., Ex. A at 32-33.  The EPA argues that these efforts were not useful nor necessary to advance the litigation in this case.  Opp'n at 23.  However, as discussed above, the EPA does not dispute that all parties agreed to try to involve Luminant in the settlement efforts so that information about what was in the documents could be shared more freely, thereby speeding a narrowed request and facilitating settlement.  Bahr Suppl. Decl. ¶ 4.  As such, the Court finds that this nominal amount of time was reasonably and necessarily incurred, and the EPA offers no rationale to support its exclusion from a fee award.

### f.    New FOIA Request

Plaintiffs seek 2.7 hours related to drafting the new FOIA request as part of the parties' settlement agreement.  Bahr Decl., Ex. A at 41-42.  The EPA again argues that these efforts were not useful nor necessary to advance the litigation in this case.  Opp'n at 23.  However, as Plaintiffs point out, "the second FOIA was an integral component of the settlement of this matter and sought the same nature of information requested by the initial FOIA request."  Reply at 13.  As such, the Court finds that this time was reasonably incurred.

g.       *Fees Related to Summary Judgment Motion and Reply*

The EPA argues that Plaintiffs are seeking reimbursement for too many hours related to their summary judgment motion, noting that Plaintiffs charged 36.4 hours for a motion that dealt with only one "remarkably simple" legal question—whether the EPA was processing quickly enough the records responsive to Plaintiffs' request.  Opp'n at 23.

Mr. Bahr billed a total of 61.8 hours under the category "Motion for Summary Judgment and Reply," while Elena Saxonhouse billed 5.7 hours.  Bahr Decl., Ex. C.  Many of the billing entries simply state "Research for MOSJ" or "Draft MOSJ."  *Id.*, Ex. A at 19, 21-23.  From these entries, it is difficult for the Court to determine the reasonableness of time spent on varying issues.  Despite this, Plaintiffs failed to provide any further explanation for the billing entries in response to the EPA's Opposition.  Given Mr. Bahr's experience as an attorney, having "drafted, reviewed and submitted countless FOIA requests and appeals," *see id.* ¶ 9, it is at least questionable that he would spend as much time as he billed for drafting the motion.  *See, e.g.*, *Audubon Soc. of Portland v. U.S. Natural Res. Conservation Serv.*, 2012 WL 4829189, at *7 (D. Or. Oct. 8, 2012) *aff'd sub nom. Audubon Soc'y of Portland v. Natural Res. Conservation Serv.*, 573 F. App'x 640 (9th Cir. 2014) (deducting 20 of 34 hours claimed for Mr. Bahr's work in drafting summary judgment motion in FOIA case).  As Plaintiffs failed to provide any further information regarding these billing entries, the Court finds a reduction to 25 hours appropriate.

The same is true of Plaintiffs' Reply brief.  As the EPA notes, Plaintiffs request 21.5 hours of attorney time for its preparation, but the Reply is approximately 10 pages and addresses many of the same arguments as in Plaintiffs' motion.  *See* Dkt. No. 43.  Accordingly, the Court finds a reduction to 15 hours appropriate.  *See, e.g.*, *Audubon Soc. of Portland*, 2012 WL 4829189, at *7 (deducting 7 of 14 hours for Mr. Bahr's work in drafting reply brief).  Thus, the Court shall deduct a total of 17.9 hours related to summary judgment briefing.  As Mr. Bahr's 2012 billing rate was $575 per hour, this amounts to a reduction of $10,292.50.

h.       *Overall Exercise of Billing Judgment*

Finally, the Court looks to Plaintiffs' overall exercise of billing judgment.  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are

27

excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked." *Id.* at 437.

Here, Plaintiffs have shown that they exercised good billing judgment by deducting 111.8 hours from the amount billed in this case. Bahr Sec. Suppl. Decl. ¶ 5. As such, the Court finds that Plaintiffs have demonstrated that they exercised appropriate billing judgment and eliminated inefficiencies. Therefore, no percentage reduction is necessary. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."); *see also Moreno*, 534 F.3d at 1112 (a "district court can impose a small reduction, no greater than 10 percent—a "haircut"—based on its exercise of discretion and without a more specific explanation").

> i.     Summary

Based on the analysis above, the Court finds that the number of hours proposed by Plaintiffs for inclusion in the initial lodestar figure is reasonable, except for a total of $18,272.50 related to charges for reviewing the documents after they were produced and Plaintiffs' summary judgment motion and reply briefs. Accordingly, of the $185,982.50 Plaintiffs claim, the Court finds $167,710.00 is a reasonable amount.

> 2.     Hourly Fee Claimed

In assessing a reasonable hourly rate for the lodestar figure, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984). The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the

1    plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*

2    *of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The defendant may introduce

3    rebuttal evidence in support of a lower hourly rate." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th

4    Cir. 2001).

5        Here, Plaintiffs claim that reasonable attorney rates for this case range from $350 to $650

6    per hour.  Mot. at 20.  David Bahr's rates are $500 for 2010, $550 for 2011, $575 for 2012, $600

7    for 2013, and $650 for 2014.  Elena Saxonhouse's rates are $350 for 2011, $400 for 2012, and

8    $425 for 2013.  Paralegal Kathleen Krust's rate is $150.

9        The EPA argues that Plaintiffs are seeking reimbursement at an inflated billing rate.

10   Opp'n at 24.  As to Mr. Bahr, the EPA notes that his billing statements demonstrate he bills his

11   client at the rate of $150 per hour, not the $500-$650 Plaintiffs seek.  *Id.*  It maintains that

12   Plaintiffs are not entitled to seek reimbursement for amounts greater than they were billed and are

13   not entitled to retroactively increase the amount billed because they have an opportunity to apply a

14   fee-shifting statute.  *Id.*  The EPA also notes that Plaintiffs do not provide a survey of the local

15   area or whether the fee agreement was contingent.  *Id.* at 25.

16       The burden is on the fee applicant to produce satisfactory evidence "that the requested

17   rates are in line with those prevailing in the community for similar services by lawyers of

18   reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896.  Plaintiffs have

19   submitted declarations establishing that David Bahr has 24 years of environmental and FOIA-

20   related litigation experience, Elena Saxonhouse has practiced environmental law for eight years,

21   and Kathleen Krust has ten years of experience as a paralegal.  Bahr Decl. ¶¶ 8-9, Saxonhouse

22   Decl. ¶¶ 7, 13.  They have also submitted declarations from four California litigators with years of

23   experience in both private and public interest practices—James Wheaton, Mike Axline, Brian

24   Gaffney and Donald Mooney.  All four attest that the rates charged by Plaintiffs' counsel are

25   within the range of reasonable hourly rates awarded to counsel of similar skill and experiences in

26   the San Francisco legal market and in court awards.  Axline Decl. ¶ 7, Dkt. No. 80 (requested rates

27   are "commensurate with the rates charged by other lawyers" with comparable experience or even

28   "modest" by comparison); Gaffney Decl. ¶¶ 10-11, Dkt. No. 81 (requested rates are "consistent

United States District Court
Northern District of California

with attorneys of similar skill and experience" and are thus "reasonable and appropriate for Plaintiff's counsel in the San Francisco, California legal market"); Mooney Decl. ¶ 17, Dkt. No. 82 (averring that requested rates represent the "fair-market value" for the San Francisco region); Wheaton Decl. ¶ 15, Dkt. No. 83 ("The hourly rates requested by plaintiffs for their attorneys are comfortably within or even below the ranges for reasonable rates charged by and awarded to attorneys of comparable experience in federal and state courts in the San Francisco legal market for the relevant years."). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*, 896 F.2d at 407.

Further, judges in this district routinely award attorneys' fees in similar cases at rates equal or comparable to Plaintiffs' request. *See, e.g.*, *Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 878 (N.D. Cal. 2012) (awarding fees at up to $700); *Rosenfeld*, 904 F. Supp. 2d at 1004 (same); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 921 (N.D. Cal. 2011) (award of $575); *Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012) (awarding fees at up to $625).

Although the EPA argues that Plaintiffs are seeking reimbursement at an inflated billing rate, it has failed to introduce any rebuttal evidence in support of a lower hourly rate. *Mink*, 239 F.3d at 1145; *see also Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (Defendant bears the "burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits."). Although the EPA argues that the Court should not award Mr. Bahr his requested rates because his billing statements demonstrate he bills his client at the rate of $150 per hour, this position was directly addressed—and rejected—by the United States Supreme Court in *Blum*, wherein the Court held that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." 465 U.S. at 894-95; *see also Hensley*, 461 U.S. at 447 ("judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market."); *Prison*

United States District Court
Northern District of California

*Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).

Thus, because the EPA has not rebutted Plaintiffs' declarations establishing the reasonableness of the requested rates, the Court finds that Plaintiffs may recover fees at the market rates they seek.

     3.    <u>Costs</u>

Plaintiffs also claim $1,923.56 in costs.  Bahr Sec. Suppl. Decl. ¶ 9, Ex. M.  The EPA does not object to Plaintiffs' request for costs, and the Courts finds Plaintiffs have provided adequate documentation in support of their request.  Accordingly, the Court awards Plaintiffs $1,923.56 for costs that were reasonably incurred.

### V.  CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have demonstrated both eligibility and entitlement to an award of attorneys' fees.  The record in this case demonstrates that they substantially prevailed and that all four *Long* factors in assessing entitlement to a fee award under FOIA weigh in their favor.  After careful review of Plaintiffs' billing records, and having adjusted the number of hours claimed as appropriate, the Court GRANTS Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, and awards Plaintiff a total of $169,633.56.

**IT IS SO ORDERED.**

Dated: December 8, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge